## Smith v. Mustain.

(Decided October 9, 1925.)

### Appeal from Edmonson Circuit Court.

1. Libel and Slander—"Words Actionable Per Se" and "Words Actionable Per Quod" Defined and Distinguished.—Words "actionable per se" are those which law presumes must actually, proximately, and necessarily damage defendant and for which general damages are recoverable; words "actionable per quod" are those not actionable per se upon their face, but are only actionable in consequence of extrinsic facts showing circumstances under which they were said or the damages resulting to slandered party therefrom.

2. Constitutional Law—Bastardy Proceeding is "Criminal Prosecution" Within Constitution.—A bastardy case is a "criminal prosecution" within Constitution, section 11, guaranteeing hearing to accused in all criminal prosecutions.

3. Libel and Slander—Charge that Witness had Sworn a Lie, Words Being Spoken in Court, was Privileged.—Where defendant in a bastardy proceeding in heat of controversy charged witness with having sworn a lie, he was not liable therefor in slander, statement being privileged as in course of judicial proceedings.

M. M. LOGAN, B. M. VINCENT and C. E. SMITH for appellant.

JOHN A. LOGAN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant seeks to reverse a judgment for $245.00 obtained against him by Gordon Mustain for having said of and concerning Mustain in the presence of a number of people that, "He swore a lie." A bastardy proceeding had been instituted by a young woman against Loyd Smith in the Edmonson county court, charging him with being the father of a bastard child born to her. Upon the third trial of the case Smith introduced as a witness in his own behalf, on cross-examination, was asked whether or not he had had a conversation with Gordon Mustain in Bowling Green in which he had told Mustain that "he had a girl in a family way and that she was about four or five months gone." To this question Smith answered that he had made no such statement to Mustain, and, "He will not tell you that I did." Later Mustain was called as a witness and testified that he did have a conversation with Smith and that he did make this statement to him. After the close of all the evidence and while John A. Logan, the Commonwealth's attorney, was making the closing argument to the jury in this bastardy proceeding, and while Logan was stressing and emphasizing the statement made by Mustain as a contradiction of the evidence of Smith, he turned to B. M. Vincent, attorney representing Smith, and said: "You said that Gordon Mustain would not swear it, but he did." To which Vincent responded by saying: "If he swore it, it was not true." Whereupon Smith blurted out, "When he swore it, he swore a lie."

On the second day thereafter Mustain filed suit against Smith for $5,000.00 and, with the introduction and prayer omitted, his petition is as follows:

"The plaintiff states that on Monday, March 6th, 1922, in Edmonson county, Kentucky, the defendant falsely and maliciously spoke of this plain-

tiff and published in his presence and hearing and in the presence and hearing of James Lashley, Martin Simon, E. T. Duvall, and a large number of. other persons then and there assembled these words, 'He swore a lie,' thereby falsely charging this plaintiff with the crime of false swearing.''

Smith then filed his answer, in which, after admitting the speaking of the words charged, he says:

''He further says that said statement was made during the heat of argument for the sole purpose of protecting his interest as defendant in the action then pending and being heard by a jury which was to render a verdict in said case; and that the words were spoken without any malice or any intent to charge plaintiff, Gordon Mustain, with the crime of false swearing or any other crime. This defendant pleads and relies upon his privileges to speak in his own behalf as a party to the action then pending.''

Upon the trial of the case all the witnesses stated that the incident above recited took place in the presence of the jury during the trial at the courthouse in Browns-ville, Ky., and that it was during the third trial of said action, and that the feelings between the parties and their friends ran very high. The witnesses for the defendant denied that the language was used as stated by plaintiff's witnesses, but admitted that statements were made by the said Vincent, attorney for defendant, and the said defendant tending to show that the statements made by the said Mustain were untrue. At the conclusion of plaintiff's evidence the defendant moved the court to instruct the jury to find for him on the ground that the statement made by him, if it was made, was privileged because spoken in his defense during the trial, which said motion was overruled by the court, to which ruling defendant at the time excepted. And again he renewed said motion at the conclusion of all the evidence, when it was again overruled and exceptions were again taken by the defendant.

Actionable words are divided into two classes. Those actionable *per se,* which the law presumes must actually, proximately and necessarily damage the defendant and for which general damages are recoverable. Other words are classified as actionable *per quod,* and in this class are those words which, upon their face, are not actionable *per se,* but are only actionable in consequence of extrin-

sic facts showing the circumstances under which they were said or the damages which resulted to the slandered party therefrom. An outstanding case of this class is the case of Hardin v. Harshfield, 11 Ky. L. R. 638, 12 S. W. 779.

In the case of Watson v. Hampton, 5 Ky. (2 Bibb) 319, the defendant was charged with having said of the plaintiff, "He, the said Thomas, had sworn to a lie." These words, the court held, were not actionable, but had the words in this case been laid with a colloquium concerning a judicial proceeding or had any specific damages been charged, they would have been sufficient to have maintained the action.

In the case of Martin v. Melton, 7 Ky. (4 Bibb) 99, the defendant was charged with having said, "You have sworn a damn lie and I can prove it by Clemens." This court held that in the absence of any colloquium the words were not actionable.

In the case of Ramey v. Thornberry, 46 Ky. (7 B. Monroe) 475, the defendant was charged in the petition with having said, "Ramey swore a lie in the Pike circuit court on the trial of the Commonwealth v. Davidson Mays." These words the court held were actionable. Thus it would appear that in the present state of the pleadings, the defendant's demurrer should have been sustained.

The next question that arises is, were the words spoken by Smith, when and where they were, privileged? In section 11 of our Constitution, one of the rights given a man is: "In all criminal prosecutions," and a bastardy case is a criminal prosecution, "the accused has the right to be heard by himself and counsel." The books are full of cases holding that judges, counsel, parties representing themselves, and all witnesses, are absolutely exempted from liability in libel or slander for words pertinent, material or relevant to the issue, but otherwise defamatory, said or published in the course of judicial proceedings. It is rather unusual for a party represented by counsel and when not himself on the stand as a witness, to blurt out something defamatory of a witness or of his opponent or his counsel; but the privilege of counsel to say such things is derived from his agency for his client, and certainly the agent has no greater rights than the principal, and while we must admit it was a great breach of decorum and one for which the court might very properly have punished Smith for contempt, still a

party to a suit in a court of justice, although not acting as his own counsel, or testifying as a witness, is not liable to be sued for slander for any statement he may make, pertinent, material or relevant to the issue. This is not in conflict with the decision in the case of Dedway v. Powell, 67 Ky. (4 Bush) 77, 96 Am. Dec. 283, as in that case it does not appear that Dedway had pleaded and relied upon his privilege, whereas in this case Smith has pleaded his privilege and specially relied thereon.

Therefore, it follows that the appellant's motion for an appeal must be granted.

The judgment is reversed.