## Commonwealth ex rel. Baker v. Bondie.

Feb. 28, 1939.

WILLIAM H. FIELD, Judge.

LAWRENCE S. GRAUMAN, County Attorney, and RICHARD P. WATTS for appellant.

G. P. BUTLER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

This is a bastardy proceeding originating—as required by statute—in the county court of Jefferson county, at the instigation of Bertha Louise Baker, the mother of the illegitimate child. At the hearing in that court defendant was found not guilty by the jury. An appeal was duly prosecuted to the Jefferson circuit court and was heard before Hon. William H. Field, Judge of the Common Pleas Branch, Third Division, of the circuit court for Jefferson county. At the close of the evidence he refused instructions Nos. 1, 2 and 3 offered by appellant and plaintiff below, and then on his own motion gave to the jury instructions of the same designations (Nos. 1, 2 and 3) but which were materially different—especially as to No. 2—from those offered by plaintiff. No. 2, as given to the jury by the court, said: "If, on all the evidence, you entertain a reasonable doubt as to Bondie being the father of the child, you should find Bondie not guilty." The court also instructed the jury that its verdict must be unanimous and could not be returned by a less number than the entire membership. By those instructions the court construed the procedure as a criminal one and to be practiced by the rules governing criminal prosecutions. The jury returned a verdict finding defendant not guilty, followed by a judgment dismissing the proceedings, to reverse which plaintiff prosecutes this appeal.

In the trial court's opinion overruling plaintiff's motion for a new trial it is stated: "I treated the proceeding as criminal in nature." The cases of Smith v. Mustain, 210 Ky. 445, 276 S. W. 154, 44 A. L. R. 386; Maher v. Commonwealth, 242 Ky. 51, 45 S. W. (2d) 465, and Early v. Bradfield's Ex'x, 266 Ky. 395, 99 S. W. (2d) 190, are then referred to, and with reference to the opinion in the latter case the court said: "While the comment was in no way decisive, it was asserted that 'a bastardy proceeding is a civil action.' We may consider the Court of Appeals as committed to that doctrine, which prevails in the majority of jurisdictions." Nevertheless, the opinion seems to cling to the interpretation that the practice in such a procedure should conform to the rules governing criminal prosecutions, and

not those applicable to civil actions. The learned trial judge finally concludes that "All this is, however technical. Admitting the prima facie technical error, it does not necessarily follow that in the particular case, it was prejudicial." He then sustains the practice he adopted in the trial of this case before him upon the ground that "Under the facts I believe the instruction justified," upon the theory that the two errors referred to in the instructions—and practically admitted to be such—were non-prejudicial. With that conclusion we are unable to agree.

It is not necessary for a recitation of the testimony to be made in this opinion. Suffice it to say that the case against defendant was about as convincingly made out by the testimony of the complaining mother of the unfortunate child and other witnesses as is usually met with when the paternity of the child is denied by the defendant in such a proceeding, and we have been unable to find any fact throughout the record whereby the admittedly erroneous practice is softened to the point where it may be considered as non-prejudicial. We stated that the court in its opinion referred to the case of Smith v. Mustain, supra, during the course of which it is parenthetically said: "And a bastardy proceeding is a criminal prosecution." That case was an action for slander, and while the quoted expression from the opinion had a pertinent setting, it was nevertheless one parenthetically made and non-essential to the determination of the issues presented. Beginning with the case of Schooler v. Commonwealth, Litt. Sel. Cas. 88, and continuously since then (with the possible exception of the Smith case supra), this court has consistently construed our statutes, providing for such a procedure, as creating a civil remedy and not a criminal offense. As a consequence such actions are governed *throughout* by the rules of practice applicable to civil proceedings and not by those applicable to criminal prosecutions.

The text in 7 Am. Jur. 680, Section 81 says in part: "In jurisdictions where the proceeding is simply to compel the putative father to support his child, it is almost uniformly held to be civil in its nature, since to determine the nature of an action, the court should look not so much to the method of procedure to be followed as to the end to be attained." In note 15 to that text there is listed 18 cases from the highest courts of the same number of states of the Union as supporting it, among

which is the case of Emmons v. Commonwealth, 197 Ky. 674, 247 S. W. 956, 31 A. L. R. 601. In that case the plaintiff was seeking to collect the unpaid portion of the award made in a bastardy proceeding from the surety on defendant's bond which he had executed in that proceeding to secure the payment of the amount allowed and at the times designated in the judgment. Before the entire judgment was paid the defendant died and the surety resisted his liability for the balance on the ground that the judgment was a penalty assessed in a criminal proceeding, and that the uncollected portion died with the death of the principal in the bond. After citing some foreign cases sustaining the contention of the surety therein (as based on the local statute) our opinion said: "These cases proceed on the theory that, under the statutes of those states, a bastardy proceeding is a criminal proceeding; that the payment of money is a part of the sentence and not a debt; that the bond is given to insure the performance of the sentence, and, being executed for the benefit of the people, does not create the relation of debtor and creditor between the reputed father and the people. Therefore, when the principal dies, performance of the sentence is no longer possible, and the liability of the surety ceases. The rule in this state is entirely different. The proceeding is civil and not criminal. Its purpose is to compel the father to contribute to the support of his own child, and the bond is for the benefit of the mother rather than the commonwealth. Schooler v. Commnwealth, Litt. Sel. Cas. [88] 91; Commonwealth v. Williams, 1 J. J. Marsh [308] 310." In support of that declaration the domestic case of Commonwealth v. Smalling, 146 Ky. 197, 142 S. W. 372, was also cited in addition to the two earlier rendered ones found in the excerpt.

The text in 10 C. J. S., Bastards, p. 143, Section 32, in treating of the nature of the statutory proceedings, says: "They are generally declared to be in the nature of civil proceedings, and, in the absence of special regulations, *must be governed by the rules of procedure applicable to civil actions generally.*" (Our italics) In note 80 at the end of that excerpt cases from Alabama, Arizona, Arkansas, Connecticut, Hawaii, Illinois, Indiana, Kentucky, Maine, Minnesota, Mississippi, Nebraska, New Jersey, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Dakota, Utah and West Virginia, are cited, in substantiation thereof. The Ken-

tucky cases are Early v. Bradfield's Ex'x, supra, and Crabtree v. Commonwealth, 213 Ky. 415, 281 S. W. 162. The list of all of the Kentucky cases approving (expressly or by necessary inference) the inserted texts would fill a page of this opinion. Therefore, if the Smith case supra, had been rendered in a bastardy proceeding wherein the point was directly involved, it would then be directly antagonistic to all former opinions on the same question, as well as all of those following it, and which would destroy its value as a precedent to be followed in this or any other future case. We, therefore, conclude and so hold that a proceeding under our bastardy statute is a civil one, and its prosecution, enforcement, and all steps that may be required to be taken are to be governed exclusively by civil rules of practice, and not by those applicable to criminal prosecutions.

The reason therefor is—as set forth in a number of our cases, as well as texts—that the procedure is nothing but one to enforce a natural obligation which the law imposes on the defendant as the putative father to provide for and take care of his own natural offspring. It does not partake of the nature of answering to society for the criminal offenses of fornication, adultery, seduction, unlawful detention of a female, rape, or any other sexually committed crime against society. Its only effect, we repeat, is to recover compensation for the failure to perform a civil obligation imposed upon defendant by the law. The practice of allowing an appeal from the county court to the circuit court of the county wherein the trial on appeal is a de novo one (even when defendant has been found not guilty in the county court) is itself sufficient to substantiate the nature of the proceeding, for if it was a criminal one, then the verdict of not guilty in the county court could not be reviewed, modified, or reversed in the circuit court to which the case was appealed, since the defendant—if the procedure was a criminal one—could defend in the circuit court on the ground of former acquittal.

It is therefore impossible for us to coincide or agree with the opinion of the learned trial judge in holding that the errors in the practice referred to were nonprejudicial, and especially the one complaining of instruction No. 2 requiring the jury to believe the defendant guilty "beyond a reasonable doubt." If the presence of such a requirement in an instruction given in a

212

civil procedure—wherein it is not necessary to prove or disprove an issue of fact by that degree of proof— is not prejudicially erroneous, then it would likewise be no error to omit the requirement in criminal proceedings wherein that degree of proof of guilt *is* required and it would, therefore, not prejudice defendant's rights for the court to omit the requirement that his guilt be established "beyond a reasonable doubt," in an instruction submitting to the jury his guilt or innocence of the criminal charge. No one, we presume, would venture to make such a contention and, we repeat, we are unable to agree with the trial court's conclusion that the error pointed out in giving instruction No. 2 was not prejudicial. Also, it was improper for the court to require a unanimous verdict of the jury of twelve who were impaneled to and did try the case, since in a civil action it is only necessary for nine members of the jury to agree upon the contested facts submitted to them.

Having arrived at such conclusions—and there being no other proper ones to which we could arrive—it follows that the court should have sustained plaintiff's motion for a new trial, and the judgment is reversed, with directions to set it aside and to sustain the motion for a new trial, and for other proceedings consistent with this opinion.