## Nall v. Phelps.

Feb. 4, 1941.

Henson & Taylor and J. M. Rayburn for appellant.

Vert C. Fraser and Withers & Lisman for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Harlan Phelps was employed by J. W. Nall to operate a small grocery store for him in Webster County, in 1937. He operated the store for a little more than a year. He instituted this proceeding against Nall in February, 1939, seeking to recover damages for certain alleged slanderous words spoken of him, and also to recover damages for malicious prosecution on account of an affidavit which Nall had made before the county judge charging him with the offense of conversion of more than $20 by selling goods and failing and refusing to account for the proceeds. Nall filed a motion to require Phelps to elect which cause of action he would prosecute. In passing upon the motion the trial court said that he construed the petition as amended to be an action for slander only, and therefore sustained the motion requiring Phelps to elect. This ruling was agreed to by Phelps. The trial resulted in a verdict for $1,000 in favor of Phelps. This appeal is being prosecuted from the judgment on that verdict.

Reversal is urged upon the grounds that the trial

court erroneously permitted the affidavit to be introduced as evidence, and the closing argument of counsel for Phelps was highly prejudicial. Since the complaint as to the closing argument is directed primarily to references to the affidavit, we will discuss these grounds together.

In his instructions to the jury the trial court limited the issue to whether the jury believed that Nall had said in the presence or hearing of Lon McCarthy that, ''I thought Phelps was a fine boy when I hired him, but he turned out to be the biggest crook I ever saw. He stole over $500 from me,'' or substantially such words.

The aforementioned affidavit is as follows:

''This day personally appeared before me a County Judge, of above county and state, J. W. Nall, who being duly sworn states, that Harlan Phelps committed the offense of conversion of more than $20 by selling goods, wares and merchandise from affiant's store and failing and refusing to account for the proceeds, in county of Webster, state of Kentucky, during January to March, 1938.''

Phelps' counsel frequently referred to this affidavit in his closing argument. Nall's counsel objected to this argument and moved that the jury be discharged and the case continued. Pursuant to these objections the court admonished the jury that, if they believed Nall uttered the slanderous words contained in the instruction, they would find for Phelps, but other evidence introduced by Phelps ''in attempting to show the utterances of other slanderous words, including the affidavit mentioned, were to be considered only for the purpose of corroborating the testimony offered as to the slanderous words set forth in the instruction.'' The bill of exceptions shows that on each objection the court gave the same admonition to the jury and that Phelps' counsel agreed to this admonition and stated to the jury that his only purpose in making this argument was that they would consider it as corroborative testimony.

It is earnestly insisted that Nall made his affidavit in good faith and that it was a privileged proceeding and therefore could not be made the basis of an action to recover damages and could not be used in evidence in any way. The cases of Bunton v. Worley, 4 Bibb 38, 7 Ky. 38, 7 Am. Dec. 735; Beiser v. Scripps-McRae Pub. Co.,

113 Ky. 383, 68 S. W. 457, 24 Ky. Law Rep. 259; Forbes v. Johnson, 11 B. Mon. 48, 50 Ky. 48; Sebree v. Thompson, 126 Ky. 223, 103 S. W. 374, 31 Ky. Law Rep. 642, 11 L. R. A., N. S., 723, 15 Ann. Cas. 770; Jaybee Jellico Coal Co. v. Carter, 208 Ky. 241, 270 S. W. 768; Lisanby v. Illinois Cent. R. Co., 209 Ky. 325, 272 S. W. 753; and Smith v. Mustain, 210 Ky. 445, 276 S. W. 154, 44 A. L. R. 386, are cited in support of this contention. Granting that the making of such an affidavit is a privileged proceeding, it is necessary that it be made in good faith. See authorities supra. Phelps insists that the affidavit was not made in good faith.

It is necessary that we review briefly the circumstances leading up to the making of the affidavit by Nall in January, 1939. Phelps testified that when he left Nall's employment Nall said that there was a shortage of some $50, but that he did not blame him (Phelps) for it. It seems that an inventory of the stock of goods had been made on a retail basis a few days before Phelps took charge of the store. Shortly after he left Nall's employment another inventory was made on a wholesale basis. There was a difference of some $400 or $500 in the inventories. There is conflicting testimony as to how much Nall took out of the store in the way of advancements to his tenants and also as to how much he put into it by the purchase of new stock. It is obvious from the record that Nall was not satisfied with the check-up, and that he mentioned the matter to several parties. He went to Phelps' home on one or two occasions to get books which had been kept by Phelps. Phelps testified that he had left a copy of the books at the store, but that he let Nall have his copy of them. Nall testified that he went to the county attorney and told him of the situation and that the county attorney told him that he would make Phelps talk, and that he went before the county judge and signed the paper, which turned out to be the affidavit, without knowing what was in it. A warrant was issued upon this affidavit and at Phelps' examining trial Nall said that he was unable to say that Phelps was responsible for the claimed shortage. Phelps was thereby released from custody. Nall denied that he had blamed Phelps for the claimed shortage.

It is insisted that there is no evidence showing bad faith on the part of Nall in the signing of the affidavit.

With this we cannot agree. It is our view that the facts and circumstances, including Nall's own testimony, show clearly that the affidavit was not made in good faith. Nall cannot be heard to say that he did not know what was in the paper when he signed it. Had he in good faith thought Phelps' accounting was incorrect, he could have availed himself of his civil remedies. It follows, therefore, that it is our view that the trial court properly admitted the affidavit as corroborative evidence.

It is urged also that the court's admonition was in effect a peremptory instruction that the affidavit did corroborate the other evidence. We cannot agree with this interpretation of the admonition. We have heretofore quoted it in substantial form. The admonition shows that the court told the jury that the only purpose for which the affidavit could be considered was to corroborate the other evidence. It was for the jury to determine whether it did or did not so do.

As indicated, objections to the closing argument of Phelps' counsel are directed mainly to reference to the affidavit. We have said that it is our view that this affidavit was not made in good faith and was therefore admissible as corroborative evidence. Such being the case Phelps' counsel could comment upon the affidavit and draw reasonable inference therefrom. This he did, and, in all probability, in a forceful manner. While the argument may not have been a model one, we are not prepared to say that it was such as to warrant a reversal of this case. When Nall made the affidavit, under the circumstances which we have pointed out, and uttered the slanderous words charged to him, as the jury believed, he opened the door for a proceeding such as the one before us. We think, therefore, that the judgment should be and it is affirmed.