The DIGEST PUBLISHING COMPANY,
Inc., Appellant,

v.

PERRY PUBLISHING COMPANY, Inc.,
Appellee.

Court of Appeals of Kentucky.

Dec. 9, 1955.

Funk, Chancellor & Marshall, Frankfort, for appellant.

Marion Rider, Henry Meigs, II, Frankfort, for appellee.

SIMS, Judge.

Appellant, The Digest Publishing Company, sued appellee, Perry Publishing Company, for $50,000 for libel. The trial judge sustained the motion of appellee to dismiss the complaint because it did not aver facts sufficient in law to state a cause of action. This appeal followed.

The complaint avers appellant is a corporation and publishes a newspaper in Franklin County and that appellee also publishes a newspaper in the same county, which are the only two papers published therein. It is further averred in the complaint that appellee on August 19, 1954, published on the front page of its paper, enclosed in a box:

"$2,000 'Lifted' from Frankfort. See Page 6"

On page 6 of that issue there appeared an editorial reading:

"Over $2,000 Goes Down the Drain

"A classic example of how gullible people can be took place in Frankfort this week when out-of-town advertising salesmen sold almost 75 retailers of Frankfort on a scheme whereby all the merchants got a small advertisement to run on a 'Shop in Frankfort' page ad.

"The 'Shop in Frankfort' theme is all to the good and no one would argue about that, as witness the many times this newspaper has run house advertisements free of charge on this subject.

"The deal is for the out-of-town boys to buy the space (say a page) from the newspaper at space rates and then go around to the merchants and charge them an exorbitant fee for the identical space the merchant could buy much cheaper by going direct to the newspaper. You have to have a 'gimmick' to sell this and the one in this case is high pressure on each merchant with patriotic theme of shopping at home. These men were further aided by the fact that for some reason the Retail Division of our Chamber of Commerce approved the solicitation of these ads.

"Based on these ads running for about three months, the out-of-town boys will walk away with over $2,000 (money that would have bought a lot of advertising space in either the weekly newspaper or the State Journal), while the newspaper itself will receive possibly half that amount.

"This sort of thing does no one any good except the men who sold the space and who take the money out of town. And it's a pretty good livin' for a few days work! At the risk of sounding like sour grapes this newspaper has made it a policy never to 'wholesale' newspaper space to an outsider in order for the latter to retail it in turn to a local advertiser at much higher rates than if the merchant dealt with the newspaper directly.

"The merchandising department of any newspaper will aid the merchant in drawing up any theme for an advertisement, and at no cost to the advertiser.

"Someone has goofed, but good, and we know the merchants would have been a lot better off if they had taken the same amount of money they are spending on this scheme and spent it directly either in the weekly or daily newspaper available to them in Frankfort."

Appellant avers in its complaint that appellee wilfully and maliciously published the above quoted statement, and the natural interpretation placed thereon by the subscribers, advertisers and readers of its paper, and the public generally, is that appellant had committed the criminal, immoral or unethical act of improperly taking away from its advertisers and out of the community $2,000 in money; that it thereby lost the good-will of its subscribers, advertisers and "said language prejudiced plaintiff (appellant) in its trade, calling or profession and destroyed the confidence of its advertisers, subscribers and public generally in plaintiff" to its damage in the sum of $50,000.

■ The rule is that actionable words are divided into two classes; (a) those actionable per se which necessarily damage plaintiff; and (b) those which are actionable in consequence of extrinsic facts showing the circumstances under which they were written or spoken and the damages resulting therefrom. Smith v. Mustain, 210 Ky. 445, 276 S.W. 154, 44 A.L.R. 386.

■ To be actionable per se justifying a recovery without averments of special damages the words must tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society. But it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct. To be libelous per se the defamatory words must be of such a nature that courts can presume as a matter of law that they do tend to degrade or disgrace the defendant, or hold him up to public hatred, contempt or scorn. Shields v. Booles, 238 Ky. 673, 38 S.W.2d 677.

■■ The objectionable words must be construed in their most natural meaning and in the sense in which they would be understood by those to whom they were addressed. Such words must be measured by the natural and probable effect on the mind of the average lay reader rather than subjected to the critical analysis of the legal mind. Sweeney & Co. v. Brown, 249 Ky. 116, 60 S.W.2d 381.

Appellant argues the above quoted words are libelous per se. Let us apply the rule set out in the preceding paragraphs to the words of which complaint is made, and thereby determine whether or not they are libelous per se.

The publication of which appellant complains merely stated that the local merchants of Frankfort were induced by out-of-town solicitors, with the aid of the local Chamber of Commerce, to buy advertising space in appellant's paper at a price much in excess of what the same merchants could have purchased it directly from appellant or from appellee, and in this way $2,000 was earned in a period of time by the out-of-town solicitors, which money was taken out of the community and benefited no one except the out-of-town solicitors.

■ No unbiased person can read the article printed in appellee's paper without concluding it criticises the out-of-town solicitors, the local Chamber of Commerce and the local merchants rather than appellant. It charged no criminal or disgraceful acts and held no one up to scorn, contempt or ridicule, least of all appellant.

It is further argued by appellant "the boxed in" words on the first page of appellee's paper, "$2,000 'Lifted' From Frankfort. See Page 6", are libelous because the word "lifted" implied that the $2,000 was stolen, and the editorial referred to on page 6 implied appellant participated in the "lifting". The word "lift" has a provincial or colloquial meaning "to take off or away dishonestly; to carry off by theft". Webster's New International Dictionary, 2d Ed. Several cases are cited by appellant to the effect that the sting of a libel may be con-

tained in a headline. Pratt v. Pioneer Press Co., 30 Minn. 41, 14 N.W. 62; Express Publishing Co. v. Lancaster, Tex.Civ.App., 270 S.W. 229; Brown v. Globe Printing Co., 213 Mo. 611, 112 S.W. 462.

We do not find that the "boxed in" words connect appellant in any way with the lifting of this $2,000 from Frankfort; nor does the word "lift", as used in appellee's paper, imply that the money was stolen. All it implies is that the money was unwisely or foolishly spent by the merchants for the sole benefit of the itinerant solicitors. The editorial to which the "boxed in" words refer clearly shows the "lifting" of the money was done by the solicitors and not by appellant. We can find nothing in the words of which complaint is made by appellant which reflects upon the character and integrity of it.

The trial judge properly dismissed the complaint as not stating a cause of action and his judgment is affirmed.