Argued and submitted February 15, reversed and remanded August 8, 1984

## STATE ex rel FOX,
*Respondent,*

*v.*

## HICKS,
*Appellant.*

(60-82-02507; CA A28881)

686 P2d 431

Diane DePaolis, Lane County Legal Aid Service, Eugene, argued the cause and filed the brief for appellant.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Jan Peter Londahl, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This is an action brought by the state to determine the paternity of the minor child born to Tammie Fox on October 11, 1979. The court ruled that defendant is the father and ordered him to pay child support. We reverse.

Pursuant to the prerequisites for the receipt of public assistance, Tammie Fox named defendant as the father of her child. Thereafter the state initiated this paternity action. Defendant appeared without counsel, denied paternity and agreed to have the case set for trial on January 18, 1983. Defendant was indigent and was represented by a Legal Aid attorney. In deposition testimony, defendant expressed his willingness to submit to blood group tests but stated that he was unable to pay for the tests, because he was indigent and unemployed.

In December, 1982, defendant, his attorney and the state's attorney signed a stipulation in conjunction with a request to postpone the trial. The stipulation and order were signed by the court on December 20, 1982. The stipulation states in part:

"Defendant, Jimmy K. Hicks hereby agrees to submit to blood testing of himself, the relatrix, and the child on or before March 15, [1983] and recognizes that he has the obligation for paying for such tests."

Defendant asserted that the delay of trial was necessary so that he could accumulate the funds to pay for the tests. In January, 1983, he deposited $60 with his counsel toward payment of the costs of the tests.

On March 16, 1983, the state moved for determination of paternity pursuant to ORS 109.252:

"In a civil action under ORS 7.215 and 109.125 to 109.165, in which paternity is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, alleged father and any other named respondent who may be the father to submit to blood tests. If any person refuses to submit to such tests, the court may resolve the question of paternity against such person or enforce its order if the rights of others and the interests of justice so require."

In an accompanying affidavit, the state said that the postponment of trial was on the express condition that defendant enter into a stipulation to pay for the blood tests and that no such tests had been performed. The state argued that that was equivalent to a refusal under ORS 109.252.

Defendant submitted his affidavit and memorandum in opposition to the state's motion. In the affidavit, he outlined the dire state of his finances, his attempt to acquire the necessary funds, approximately $450, to pay for the tests and affirmed his willingness to submit to the tests. He also moved for appointment of blood test experts and requested that the state be ordered to pay for the tests, because he was indigent. He offered the $60 accumulated in his counsel's trust account as part payment and argued the state could recover the remainder of the expense as part of costs following trial.

The court heard arguments on the motions, but no evidence other than the affidavits was received. The court granted the state's motion for judgment of paternity under ORS 109.252 and ruled that defendant's motion for blood tests at state expense was moot. The court also ordered defendant to pay child support.

Defendant contends that the judgment of paternity is erroneous for three reasons. He argues, first, that the uncontroverted evidence of his indigency and his expressed willingness to submit to the tests does not support the finding of a refusal required for judgment under ORS 109.252. Second, he contends that the stipulation was not an order of the court that he submit to the blood tests as required to trigger the application of ORS 109.252. Third, he contends, citing *Little v. Streater,* 452 US 1, 101 S Ct 2202, 68 L Ed 2d 627 (1981), that he was denied due process of law by being prevented from having critical and reliable blood test evidence available because he is indigent.

The state argues that, because defendant entered into a stipulation to take and pay for the blood tests and failed to do what he had agreed, judgment under ORS 109.252 was appropriate. The state contends that defendant should have attempted to withdraw from the agreement rather than simply fail to take the tests. Any defect in the order, the state contends, was waived by defendant's stipulation, and he cannot now claim that he was not required to take the tests at

his own expense. In response to defendant's due process argument, the state contends that *Little* is distinguishable, because it involved a different state statutory scheme and materially different facts.

We discuss defendant's contentions in the order presented. Defendant first contends he did not refuse the tests and that the summary adjudication of paternity under ORS 109.252 was inappropriate. That statute allows the court a measure of discretion in determining paternity against the party refusing to submit to a blood test, *i.e*, "if the rights of others and the interests of justice so require." The exercise of discretion is dependent on a finding that the party has refused the test. The authority of the court to adjudicate paternity summarily under ORS 109.252 is in the nature of a sanction to enforce compliance with a blood test requirement. The determination is made without taking evidence on the factual questions as to who is the father of the child. In that context, we conclude that refusal is not simply a failure to take the test but an unwillingness to comply based on an intention to disobey the court's requirement respecting the blood test. Although the failure to take the test may be based on unjustified reasons and therefore be tantamount to a refusal, the court must examine the reasons to determine if there is in fact a refusal. It cannot simply equate the failure to take the tests with a refusal under the statute without an assessment of the underlying reasons, which should be done at the time the issue of refusal is raised under ORS 109.252.

The court apparently concluded that, because defendant had agreed to take the tests and pay for them, any failure to comply with that agreement was a refusal. There is no indication in the record that the court determined that defendant's reasons for not taking the test were unjustified or that his request for the tests at state expense was untimely.

Defendant's affidavit regarding his willingness to submit to the tests and his financial inability to pay for them in advance was uncontroverted. Although he had agreed to take and pay for the tests, that expectation did not materialize and, at the time the state moved for summary determination of paternity, defendant was apparently unable to abide by his agreement. We conclude that, under the facts presented in the record, the trial court had no basis for concluding—as it was

required to do—that defendant's failure to take the tests was not based on unreasonable considerations and was therefore not a refusal pursuant to ORS 109.252.

We rest our conclusion in part on considerations of due process of law under the federal constitution. Defendant raised that issue in conjunction with his request for blood tests at public expense. However, due process considerations are implicated in determining if a putative father who is indigent can be summarily determined to be the father of the child under ORS 109.252 without a meaningful opportunity to present blood test evidence.

*Little v. Streater, supra,* presents a situation similar to this case. The mother of a child born out of wedlock was receiving public assistance. Under Connecticut law, she was required to name the father of the child, and the state had authority to proceed against the person so designated for a determination of paternity and to seek child support. Little was named as the father of the child. He was incarcerated in the penitentiary and moved for blood tests at public expense because of indigency. The motion was denied, and at the trial he was determined to be the father of the child. No blood test evidence was presented. The Supreme Court identified the issue:

> "This appeal presents the question whether a Connecticut statute, which provides that in paternity actions the cost of blood grouping tests is to be borne by the party requesting them, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment when applied to deny such tests to indigent defendants." 452 US at 3.

The Court analyzed the due process question under the principles of *Mathews v. Eldridge,* 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976):

> "* * * [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. * * *" 424 US at 335. (Citation omitted.)

The Court noted that blood grouping tests are a universally recognized and reliable method of exonerating putative fathers. It assessed the various interests involved in the *Mathews* factors and concluded that the putative father had been denied due process of law:

"The private interests implicated here are substantial. Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. This Court frequently has stressed the importance of familial bonds, whether or not legitimized by marriage, and accorded them constitutional protection. * * * Just as the termination of such bonds demands procedural fairness, see *Lassiter v. Department of Social Services,* [452 US 18, 101 S Ct 2153, 68 L Ed 2d 640 (1981),] so too does their imposition. Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination.

"Given the usual absence of witnesses, the self-interest coloring the testimony of the litigants, and the State's onerous evidentiary rule and refusal to pay for blood grouping tests, the risk is not inconsiderable that an indigent defendant in a Connecticut paternity proceeding will be erroneously adjudged the father of the child in question. * * * Further, because of its recognized capacity to definitively exclude a high percentage of falsely accused putative fathers, the availability of scientific blood test evidence clearly would be a valuable procedural safeguard in such cases. * * * Unlike other evidence that may be susceptible to varying interpretation or disparagement, blood test results, if obtained under proper conditions by qualified experts, are difficult to refute. Thus, access to blood grouping tests for indigent defendants such as appellant would help to insure the correctness of paternity decisions in Connecticut.

"The State admittedly has a legitimate interest in the welfare of a child born out of wedlock who is receiving public assistance, as well as in securing support for the child from those legally responsible. In addition, it shares the interest of the child and the defendant in an accurate and just determination of paternity. * * * Nevertheless, the State also has financial concerns; it wishes to have the paternity actions in which it is involved proceed as economically as possible and, hence,

seeks to avoid the expense of blood grouping tests. * * * Moreover, following the example of other states, the expense of blood grouping tests for an indigent defendant in a Connecticut paternity suit could be advanced by the State and then taxed as costs to the parties. * * * We must conclude that the State's monetary interest 'is hardly significant enough to overcome private interests as important as those here.' * * *

"Assessment of the *Mathews v. Eldridge* factors indicates that appellant did not receive the process he was constitutionally due. Without aid in obtaining blood test evidence in a paternity case, an indigent defendant, who faces the State as an adversary when the child is a recipient of public assistance and who must overcome the evidentiary burden Connecticut imposes, lacks 'a meaningful opportunity to be heard.' * * *" 452 US at 13-16. (Footnote and citations omitted.)

The Court did not declare the Connecticut statute unconstitutional but held that, as applied to foreclose an indigent putative father's access to reliable evidence, it denied him due process of law.

The state argues that *Little v. Streater, supra,* is distinguishable in material respects because of differences in critical facts and a different statutory scheme in Oregon. Under Connecticut law, if a mother steadfastly maintains that a particular male is the father of her child, there is a presumption of paternity, and the burden shifts to the putative father to overcome the presumption. *Mosher v. Bennett,* 108 Conn 671, 144 A 297 (1929); *Kelsaw v. Green,* 6 Conn Cir 516, 276 A2d 909 (1971). In Oregon, the state notes, the proponent of paternity has the burden of establishing the allegation, and there is no burden placed on the putative father to disprove paternity. Although Oregon statutes do not impose a burden on the putative father comparable to the heavy burden under Connecticut law, we conclude that the variation in burdens does not significantly erode the basic rationale of *Little* or make it inapplicable here.

There are rarely impartial witnesses to the intimate act of conception and, absent scientific evidence, the outcome of a paternity action rests on the credibility of the litigants. Although there is no legal burden on the putative father, as a practical matter he has a substantial burden of refuting the testimony of the mother. In reality, blood grouping evidence is critically important to the putative father, and denial of that

evidence on the basis that he is indigent and unable to acquire it denies him due process of law. Moreover, the distinction the state makes between the statutory schemes is particularly unpersuasive in this context. The putative father's inability to pay for the tests under the Connecticut statute resulted in the unavailability of evidence that might have aided him in meeting his burden of proof. Although defendant here would not have had a formal burden of proof if a trial had been held, the practical effect of his inability to pay for the testing was a summary determination of paternity without *any* proof.

The state's alternate argument that *Little* is distinguishable is based on the contention that, because defendant agreed to pay for the blood tests, he is foreclosed from pleading indigency as a justifiable basis for failure to take the tests. We conclude that that is not a material distinguishing factor between *Little* and this case. Although defendant agreed to pay for the tests, the fact remains that he was unable to do so because of indigency. Had he been ordered to take a blood test under ORS 109.252, the inquiry would be the same, *i.e.,* whether his noncompliance is due to indigency. His agreement to pay for the tests does not alter the due process consideration. Under the state's theory, he would still be denied reliable evidence and a factual hearing because he is indigent.

We conclude that, under the circumstances presented in this case, summary determination of paternity against defendant denied him due process of law. Although he initially agreed to pay for the tests, he failed to comply with that agreement because he was indigent. Not only was he denied the use of reliable blood grouping evidence, he was foreclosed from presenting any evidence and from cross-examining or otherwise contesting evidence of paternity presented by the state. The principle of fundamental fairness expressed in the Due Process Clause was not satisfied.

Defendant's second contention is that the stipulation was not an order of the court that he submit to a blood test, and so ORS 109.252 is not applicable. Although it would be better practice for the court to order the parties to submit to blood tests, there is little doubt that the parties understood that a blood test was to be given to defendant, the mother and the child. The stipulation signed by the parties and accepted by the court was sufficient to trigger application of ORS

109.252. However, for the reasons stated, we do not agree with the way the court applied it.

■ Defendant's final contention is that his motion for appointment of blood test experts and administration of the test at state expense should have been granted. His principal argument is based on *Little v. Streater, supra.* The court did not address the motion, because it concluded that defendant had agreed to take the test at his own expense and the motion was moot. Because we conclude that defendant is not fore-closed by the stipulation from being able to present evidence, it is necessary for the trial court to consider his motion for blood tests at state expense. The court has specific authority under ORS 109.256 to entertain such a motion and, if appropriate, to order the tests conducted at public expense.

The judgment of paternity and the resultant child support order are reversed and remanded for a ruling on defendant's motion and for further proceedings not inconsistent with this opinion.