**James E. SHAW, Appellant,**

v.

**Sheila SEWARD, Appellee.**

Court of Appeals of Kentucky.

May 3, 1985.

Hon. Carl J. Melcher, Northern Kentucky Legal Aid Soc., Inc., Covington, for appellant.

John R. Elfers, Kenton County Atty., Martin J. Huelsmann, Asst. Kenton County Atty., Covington, for appellee.

Before GUDGEL, LESTER and REYNOLDS, JJ.

REYNOLDS, Judge.

This case is before us on discretionary review of the Kenton Circuit Court's order affirming a paternity determination against the appellant. Appellant, an indigent putative father, by an agreed narrative statement, admits that no facts are in contention, but asserts that his due process and equal protection rights were violated by the court's refusal to order the county or the Commonwealth to pay for HLA Blood Tests, and by the court's use of a "preponderance of evidence" burden of proof instead of a "clear and convincing" one. Further, the appellant argues that the appellee's cause of action should be barred by a retroactive application of the current four-year statute of limitations. That statute replaced the three-year statute of limitations which had been previously declared unconstitutional.

As support for his argument that his Fourteenth Amendment rights were violated by the court's failure to provide a paternity blood test at no expense to him, the appellant cites the case of *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981). In *Streater,* the United States

Supreme Court determined that an indigent's due process rights were violated by a Connecticut court's refusal to provide paternity blood tests to the indigent free of any charge. Thus, the *Streater* case initially appears to be controlling.

However, the appellee argues that the *Streater* case was decided on its specific facts, and as such is inapplicable in this case. As a basis for distinguishing *Streater*, the appellee notes that the mother in *Streater* was required, under penalty of criminal prosecution, to institute the paternity suit; that the state, Connecticut, automatically became a party to the suit; that Connecticut's evidentiary rules required the putative father to prove his innocence by evidence other than his own testimony; that the paternity actions in Connecticut have "quasi-criminal" overtones; and that Connecticut only allows the use of blood tests as exculpatory evidence and required the party who requested those tests to pay for them. We agree with the appellee that these considerations prevent an automatic application of *Streater* as controlling; however, we do find it necessary to analyze the appellant's claim in the context of *Streater*. *See Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218, 222 (1976) (wherein our Supreme Court recognized that the United States Supreme Court "is the final authority in the field of federal constitutional jurisprudence".)

■ In the case *sub judice*, the appellant asserts a violation of his due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. The evaluation of due process issues is governed by *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), which requires the analysis of three elements: the private interests at stake; the risk that the challenged procedures will lead to erroneous results and the probable value of suggested procedures in preventing erroneous results; and the government interests effected. *Streater*, 452 U.S. at 13, 101 S.Ct. at 2209.

Applying this analysis, the *Streater* Court found the private interests to be

composed of the putative father's pecuniary interest, his liberty interest which arose from risk of criminal sanctions for noncompliance, and the creation of a beneficial parent-child relationship. *Id.* These interests all mitigate in favor of the most accurate determination of paternity, which the Court found to be provided by the availability and use of blood test results. This finding was apparent in the Court's review of the second element of the *Eldridge* analysis.

In its analysis of the second element, the Court noted that blood tests were clearly evidence of valuable probative quality providing procedural safeguards for correct determinations. *Id.* at 14, 101 S.Ct. at 2209. Such safeguards were not available in the absence of these tests due to the usual absence of witnesses, the self-interest coloring of testimony, and the Connecticut evidentiary rule. *Id.* Finally, after noting the state's somewhat conflicting interest of assuring a proper determination of persons legally responsible for child support and of concern for moderating financial costs, the Court determined, especially as the state was entitled to a 75% reimbursement of its expenses from the federal government, that the court's refusal to provide the appellant the paternity blood test at no expense to him was a violation of his due process rights. *Id.* at 16–17, 101 S.Ct. at 2210–2211. The Court then suggested a manner of allocating the expense; the state should advance the cost with the cost ultimately being taxed to the parties. *Id.* at 15, 101 S.Ct. at 2210.

Given this analytical framework, we may now address the situation presented to us. However, initially it is essential to note that there is sufficient state involvement to bring into play the guarantees of the Fourteenth Amendment. Though the appellee was not subject to criminal sanctions, she was, as an AFDC recipient, required to bring the paternity suit, for the Commonwealth is required to seek support from the father if it participates in the federal program. *See generally* 904 KAR 2:020. Appellee, again by virtue of being an AFDC

recipient, automatically assigned the monies received as support to the state agency involved upon her acceptance into the AFDC program. 904 KAR 2:020 § 8(1). Further, the county attorney prosecutes all paternity suits. KRS 406.021. Therefore, we find sufficient state involvement.

■ Applying the *Eldridge* analysis to the case *sub judice* and comparing that analysis to *Streater*, we believe that the appellant's due process rights were violated by the court's refusal to provide the blood test free of expense to him. Clearly, the private interests at stake are identical with those presented in the *Streater* case. The pecuniary interest is obvious, for though no support was set at the time of the paternity determination, there is the possibility of future support obligations arising. Appellant's liberty interest is also involved in that he could, at some point, be criminally prosecuted for his nonsupport of the children, and at that time be unable to challenge the paternity determination as it would be *res judicata*. Finally, as is always the case in a paternity suit, it is imperative that a proper determination be made so as to provide a basis for the development of a beneficial parent-child relationship. Additionally, it is clear that the interests of the Commonwealth are identical to those of the state involved in *Streater*.

Therefore, the only true distinction between *Streater* and the instant case occurs in the second element of the *Eldridge* analysis. This sole distinction is the absence in Kentucky of Connecticut's evidentiary rule which required the putative father to provide evidence other than his testimony if he is to prevail. In light of the other factors involved in the second element of the analysis, this distinction is insufficient to depart from the Court's opinion in *Streater*.

The factors involved in our contested procedure are the absence of nonparty witnesses, the self-interest coloring the testimony, and the inability of an indigent putative father to obtain an HLA Blood Test due to the court's refusal to provide the test at no expense to him. These factors clearly illustrate the existence of a considerable risk of an erroneous determination. Given our recognition that blood tests are the most, if not the only, reliable source of truth in paternity cases, *see Perry v. Commonwealth, ex rel. Kessinger,* Ky., 652 S.W.2d 655, 660 (1983), it cannot be denied that provision of free blood tests to an indigent putative father would substantially decrease the risk of an erroneous determination, a result which would benefit all parties involved.

Thus the *Eldridge* analysis yields the conclusion in the instant case that the trial court's failure to provide an indigent putative father blood tests at no expense to him violated that individual's Fourteenth Amendment rights. "[D]ue process requires at a minimum that absent a countervailing state interest of overruling significance, persons forced to settle claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Streater,* 452 U.S. at 5–6, 101 S.Ct. at 2205–2206 citing *Boddie v. Connecticut,* 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). Such opportunity was not provided here; therefore, the appellant is entitled to a new trial with blood tests provided him at no cost. After reaching this decision, we would note that we are joined in our determination that a due process violation results in such a situation by all courts which have decided the issue since *Streater. See Peterson v. Moffitt ex rel. Dept. of Human Resources,* 253 Ga. 253, 319 S.E.2d 449 (1984); *Kennedy v. Wood,* Ind.App., 439 N.E.2d 1367 (1982); *Anderson v. Jacobs,* 68 Ohio St.2d 67, 428 N.E.2d 419 (1981); *Johnson v. Brinker,* 326 Pa.Super. 464, 474 A.2d 333 (1984); *see also Ex Parte Calloway,* 456 So.2d 306, 307 (Ala.Civ.App.1983); *State ex rel. Fox v. Hicks,* 69 Or.App. 348, 686 P.2d 431 (1984).

■ Further we would suggest, as did the United States Supreme Court, that the expenses in providing the tests be advanced by the Commonwealth,[1] to be taxed

---

1. It has been brought to our attention that, as of the fall of 1984, the Commonwealth has paid for

later as costs to the parties. *Cf. Smothers v. Lewis,* Ky., 672 S.W.2d 62, 64 (1984) (wherein it was recognized that our courts are "vested with certain 'inherent' powers to do that which is reasonably necessary for the administration of justice within the scope of their jurisdiction.") It may also be possible, depending upon the circumstances, to require the defendant to subsequently reimburse the state for these expenses. *M. v. S.,* 169 N.J.Super. 209, 404 A.2d 653 (1979).

■ Though finding that the appellant's due process rights were violated and reversal is required, we shall proceed to address the appellant's other arguments in order to give guidance to the trial court, and to avoid any unnecessary litigation of those issues. In reviewing those arguments, we find no error. The proper burden of proof is a "preponderance of the evidence", and as the complaint was filed prior to the enactment of the present statute of limitations it is not barred by that statute.

Appellant grounds his assertion that a "clear and convincing" burden of proof should apply in paternity cases, despite their civil nature, *see Commonwealth ex rel. Baker v. Bondie,* 277 Ky. 207, 126 S.W.2d 148 (1939), on the recent United States Supreme Court decision of *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), wherein a "clear and convincing" standard is required to terminate parental rights. While we recognize that the creation of a parent-child relationship is of equal weight to the termination of parental rights, different interests and factors are involved in the adjudication of each action.

These differences are sufficient to render *Santosky* distinguishable. "[D]ue process is 'flexible' and calls for such procedural protections as the *particular* situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). (Emphasis added.)

The burden of proof to be applied in a particular action must satisfy due process

and requires "a straight-forward consideration of the factors identified in *Eldridge* ..." *Santosky,* 455 U.S., at 754, 102 S.Ct. at 1395. The *Santosky* court in applying the *Eldridge* analysis found the private interests involved and a decreased risk of erroneous determination to outweigh the state's interests and require a clear and convincing standard. We are not of the same inclination after applying the *Eldridge* analysis to the distinct factors involved in a paternity action.

The private interests at stake in a paternity action which would be effected by the burden of proof are somewhat in conflict. While the putative father has a pecuniary and liberty interest effected, the mother in a paternity action also has a pecuniary interest effected which is directly in conflict with that of the father's. However, the creation of a beneficial parent-child relationship is the most significant interest and within this relationship the child's interest is paramount. *Streater,* 452 U.S. at 13 n. 9, 101 S.Ct. at 2209 n. 9. This interest is obviously best served by the procedure which is most likely to achieve a correct result.

The procedure which would be most likely to ensure a correct result is the subject of inquiry of the second element of the *Eldridge* analysis. Given the nature of the evidence commonly presented in a paternity action, i.e. the self-interested testimony of the parties and the exculpatory quality of blood test, *see Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 Fam.L.Q. 247 (Fall 1976), we do not believe a "clear and convincing" standard would decrease the likelihood of an erroneous determination. In fact, it is quite possible that the likelihood of erroneous determination would be increased by a "clear and convincing" standard. Thus the second element mitigates in favor of the current procedure, a "preponderance of evidence" standard.

these tests in AFDC cases.

Given the Commonwealth's interest in both a proper determination and economical litigation, both of which are best served by the current procedure, the application of *Eldridge* analysis yields the conclusion that a "preponderance of evidence" standard satisfies due process. Therefore, the court did not err in this regard. Nor did it err as to the statute of limitations issue presented to it.

 The statute of limitations issue comes before us in a unique posture. At the time this suit was filed a three-year statute of limitations was effective, and this defense was raised by the appellant. However, trial of this case was postponed in deference to the Kentucky Supreme Court's consideration of the constitutionality of that three-year statute. Subsequently, that statute was declared unconstitutional. *Commonwealth ex rel. Lepard v. Young*, Ky., 666 S.W.2d 735 (1983). The case then proceeded on the merits and, from the record before us, the issue of the action being barred by the statute of limitations was not raised again until the present time.[2]

The argument on this issue as it is presented to us acknowledges that the three-year statute was unconstitutional and inapplicable as a bar to this suit; but, as the legislature almost immediately enacted

the current four-year statute, it is clear that the legislature intended that a statute of limitations should apply to these actions and that this period should be four years. Thus the appellant requests us to apply the statute retroactively.

 While such action most certainly entails some due process problems, we need not consider those problems. Retroactive application of legislation absent clear legislative intent favoring that application is impermissible. *Roberts v. Hickman County Fiscal Court*, Ky., 481 S.W.2d 279 (1972). We are not cognizant of any such intent and therefore will not apply the statute retroactively. Nor do we consider it proper for us to address any other issue of time limitations to a paternity action as we are not presented with those issues.[3]

The judgment of the Kenton Circuit Court is affirmed in part and reversed in part and the case is remanded for a new trial consistent with this opinion.

All concur.

---

2. At the time of the appeal of this case to the circuit court, the legislature had yet to enact the current four-year statute.

3. Other cases involving issues that relate to the statute of limitations applicable to paternity actions have been granted discretionary review by this court and we would suggest postponing the new trial until those issues have been determined.