930 F.2d 918
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Laurence B. HOWARD, Jr. and Norton Coal Corporation,
Plaintiffs-Appellants,
v.
DUN & BRADSTREET, INC., Defendant-Appellee.
 Nos. 90-5779, 90-5780.
 United States Court of Appeals, Sixth Circuit.
 April 18, 1991.
 
 Before KENNEDY and RYAN, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM:
 
 
 1
 The plaintiffs, Laurence B. Howard, Jr., and Norton Coal Corporation (appellants), appeal the District Court's grant of the defendant's, Dun & Bradstreet, Inc. (appellee), motion for summary judgment. The appellants, who claim that the appellee published a libelous credit report, contend that the District Court erred in ruling that the credit report was not libelous per se, and that Howard had not established special damages.
 
 
 2
 In January of 1986, Howard was chief executive officer and sole stockholder in Norton Coal. At that time, Norton Coal borrowed $600,000 from William Smyth. When Norton Coal defaulted on that loan in July, 1986, Smyth demanded surrender of all collateral, which he alleged to be all of Howard's Norton Coal stock. Howard refused to surrender the stock, and, on August 18, 1986 Smyth filed a Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Western District of Kentucky. In the petition, Smyth listed himself as president and sole stockholder. On August 21, 1986, Howard filed a bankruptcy petition on behalf of Norton Coal, opposing the petition filed by Smyth, and asserting that Smyth had no authority to file a bankruptcy petition for Norton, and that Howard was the chief executive and sole stockholder of Norton.
 
 
 3
 On August 22, 1986, appellee, a mercantile credit reporting agency, made a special credit report available to its subscribers regarding Norton Coal. That report is the subject of this libel suit. It reflected the information contained in Smyth's bankruptcy petition, including listing Smyth as chief executive and sole stockholder. It stated that Smyth had foreclosed on Norton's stock, and had filed for chapter 11 bankruptcy. The report also included a computation of Norton Coal's net worth. The computation was based on Norton's financial statement, and concluded that Norton had a negative net worth. The summary section indicated the net worth, and the body of the report stated that the net worth did not include coal reserves in coal leases, because only an appraised value of those leases had been included in the financial statement issued by Norton. The body of the report listed the appraised value of the leases as intangible assets, and therefore did not include their value in Norton Coal's net worth. If the appraised value of the coal reserves in the coal leases was included in the net worth computation, the net worth of Norton Coal would be in excess of $60,000,000. The coal leases were treated in the same manner in which they had been treated in an earlier report issued to Norton Coal in February, 1985.
 
 
 4
 After discovering that Howard had also petitioned for Norton's bankruptcy, appellee issued a revised report on August 26, 1986. The revised report indicated that the bankruptcy court had set a date for a hearing to determine who actually owned Norton Coal. In September, 1986, Howard complained to the appellee about the information contained in the report, and the appellee issued a "stop order" on September 4, 1986, suspending the distribution of any credit reports concerning Norton Coal. On November 14, 1986, appellee issued a revised report which indicated that Smyth's bankruptcy petition was dismissed in favor of Howard's. The revised report also altered the previous summary statement of Norton Coal's net worth by including the leases as tangible assets, listed at their appraised value.
 
 
 5
 Howard and Norton Coal brought separate suits against appellee. Norton Coal claims that the report constituted libel per se, and Howard claims that the report was libelous and that he suffered special damages. The District Court consolidated the cases, and granted appellee summary judgment, concluding that the report was not libelous per se, and that the appellants could not show special damages. Howard and Norton Coal appeal. For reasons other than those relied on by the District Court, we AFFIRM.
 
 
 6
 Although appellants claim that the information contained on the summary sheet should be considered separately from the report as a whole, we must analyze the report as a whole. Under Kentucky law the report must be considered as a whole, not taken as isolated statements. "It is an elementary principle of the law of libel that the defamatory matter complained of should be construed as a whole." McCall v. Courier-Journal & Louisville Times, 623 S.W.2d 882, 884 (Ky.1981), cert. denied, 456 U.S. 975 (1982). See also Kentucky Fried Chicken of Bowling Green, Inc., v. Sanders, 563 S.W.2d 8, 9 (Ky.1978). The credit report must also be examined as it would be by Dun & Bradstreet subscribers, to whom it was addressed. McCall, 623 S.W.2d at 884. See also Digest Publishing Co. v. Perry Publishing Co., 284 S.W.2d 832, 834 (Ky.1955) ("The objectionable words must be construed in their most natural meaning and in the sense in which they would be understood by those to whom they were addressed.").
 
 
 7
 Because the publication which the appellant claims is libelous is a credit report, it is protected by the doctrine of qualified immunity. Ideal Motor Co. v. Warfield, 211 Ky. 576, 581 (1925). In order to go forward with their claim of libel, therefore, the appellants must be able to show that the credit report was published maliciously, or that the appellee refused to discontinue publication once Howard requested that it do so. Columbia Sussex Corp. v. Hay, 627 S.W.2d 270, 276 (Ky.App.1981). In order to prove malice, the appellants must show that the report was "made solely for the purpose of causing harm to the person defamed." Pearce v. Courier-Journal, 683 S.W.2d 633, 636 (Ky.App.1985) (quoting Begley v. Louisville Times Co., 272 Ky. 805 (1938)). The appellants have presented no evidence to indicate that the appellee published the report maliciously, either under the standard adopted in Pearce, or even under the less strict standard, which was rejected in Pearce, of knowledge of falsity or reckless disregard of falsity. Id. The appellee had previously issued a credit report concerning Norton Coal in which the coal reserves had also been treated as intangible assets, and the appellants had not objected to that report. There is no evidence that the treatment of the coal leases as intangible assets is anything other than a legitimate accounting decision. There is also no evidence to indicate malice in the listing of Smyth as the president. Appellee provided affidavits from those involved in the publication that indicate that the appellee investigated the facts, and did not solely rely on the pleadings filed in bankruptcy court. Prior to the publication, the appellee contacted Norton Coal, as well as the alleged president, Smyth, and his attorney, to verify the information concerning the stock ownership and the identity of the chief executive.
 
 
 8
 There is also no evidence that Dun & Bradstreet continued to publish the report after it was informed that the credit report included false information. Pearl Thomas, appellee's employee who was responsible for issuing the report, testified that she had no knowledge of Howard's bankruptcy petition at the time the original credit report was first made available to its subscribers. She testified that Dun & Bradstreet hired someone to check the bankruptcy court records daily, and pass the information of new bankruptcies on to her. Thomas stated, however, that bankruptcy records were often not available on the day that they were filed, and that although Howard's bankruptcy was officially filed on August 21, she did not receive notification of it until Monday, August 25. Any failure to get the information about Howard's bankruptcy to Thomas earlier does not rise to the level of malice. A revised report which included the information concerning Howard's bankruptcy petition was made available to subscribers on August 26, 1986. Finally, Thomas stated that a "stop distribution order" was placed on all credit reports on Norton Coal as of September 4, 1986, and that no credit reports were issued from that time until November 14, 1986. The appellants provide no evidence to contradict Pearl's affidavit and deposition. The appellants have not produced any evidence to indicate that appellee continued to publish the allegedly libelous report after Howard complained to appellee that it contained false information. The new report issued in November stated that the information contained in the earlier report was erroneous and should be disregarded. Therefore, the appellants have not shown that appellee failed to publish a reasonable explanation as required by the statute.
 
 
 9
 Appellants have offered no evidence of malice, and therefore cannot overcome the appellee's qualified immunity. The District Court's grant of summary judgment for appellee is, therefore, AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation