COLUMBIA SUSSEX CORPORATION,
INC., William J. Yung, and David
Diehl, Appellants,

v.

Laverne HAY, Appellee.

No. 81–CA–8–MR.

Court of Appeals of Kentucky.

Sept. 25, 1981.

Discretionary Review Denied
Feb. 10, 1982.

Bernard J. Blau, Jolly, Johnson, Blau & Parry, Newport, Thomas M. Tepe, Lindhorst & Dreidame, Cincinnati, Ohio, Nick Benson, Walton, for appellants.

H. Douglas Rouse, Florence, for appellee.

Before WHITE, WILHOIT and WINTERSHEIMER, Judges.

WHITE, Judge.

This appeal is taken from slander and false imprisonment awards rendered by a jury in the Boone Circuit Court.

On February 26, 1979, the Best Western Hotel of Richwood, Kentucky, was robbed. At that time appellee, Mrs. Hay, was manager of the hotel which was owned and operated by appellant, Columbia Sussex Corporation. Appellant William J. Yung was president and appellant David Diehl was General Manager of Columbia Sussex.

During the holdup the robber revealed knowledge of a special warning alarm attached to the cash register. If certain bills were lifted therefrom, the alarm was activated. Mr. Yung felt that such knowledge revealed that the robber had had inside information. Consequently, he called Mrs. Hay into an office to inform her that lie detector tests would be given her employees and her.

Evidently upset over being asked to participate in the testing, Mrs. Hay inquired whether Mr. Yung was insinuating that one of them had done it. To this he responded, "that is just exactly what I am saying, you will be surprised to find out which one did it." Further testimony implies that there were others present (Mr. Beagle, a Columbia Sussex vice-president, and/or some of the employees); however, none was called to establish that such words had indeed been heard and understood.

Subsequently, Mr. Diehl told Mrs. Hay to gather her workers for the polygraph. He is then to have said that Mr. Yung definitely felt that one of them (Mrs. Hay or her subordinates) was involved in the crime and that he tended to agree with him. Mrs. Hay testified by name that several others were present when this was said; however, none was called to corroborate this assertion.

Regarding the false imprisonment issue, testimony establishes that Mrs. Hay inquired of Mr. Diehl what would happen if they did not take the test. His answer was that they could leave, indicating that their jobs would be lost. Ultimately, each employee who was called took the polygraph examination. At the time that the tests were administered, each, including Mrs. Hay, signed a paper which acknowledged that the subject was taking the test under neither coercion nor duress. Mrs. Hay's testimony is that she did indeed submit under duress inasmuch as her job rested on such and that she informed the polygraph operator that her only lie was that she was taking it without coercion. The operator was not called.

Although the results of the tests were never formally given to the employees, testimony revealed that they established no connection between a worker and the robbery. No arrest had been made prior to trial.

A few days after this incident a television was stolen from one of the rooms. The employee in charge at that time apparently had not followed established procedure in taking the license number of the get-away vehicle; so Mrs. Hay was directed by telephone by Mr. Diehl to fire her. Mrs. Hay at first objected and then did so in what management felt was an unprofessional, insubordinate manner: While still on the line with Mr. Diehl, she yelled across the room, "Cindy, you are fired." Mr. Diehl thereupon went to the motel, and Mrs. Hay was discharged.

Mrs. Hay's further testimony is that as a result of the alleged slander and false imprisonment she suffered various nervous and digestive distresses for which she received medical attention and prescriptions. No receipts or relevant witnesses were offered to verify these medical expenses which her testimony established at $25.00. Her testimony must be held as limited therefore to descriptions of the transactions rather than proving the attendant costs. Inasmuch as those costs were the fact in issue, such testimony was immaterial.

Mrs. Hay also testified that after leaving Best Western she was compelled to take a lower paying position. No witnesses were called to prove that such in any way was related to feelings in the business community that she had been involved in the motel robbery, and her own testimony in this regard was merely self-serving and generally irrelevant.

Based upon the proof herein outlined and upon the instructions of the court, the jury returned awards of $5,000 compensatory/$7,000 punitive damages under false imprisonment against appellants Yung, Diehl, and Columbia Sussex and $6,025 compensatory ($25 medicals, $6,000 humiliation)/$7,000 punitive damages under slander against appellants Yung and Columbia Sussex.

Appellants have raised numerous issues for appellate review. Rather than responding to each from a list, the various points will be addressed through a general discussion of the law of the case.

■ Defamation is not a readily understood area of the law; consequently, certain aspects need be put into perspective. Four elements are necessary to establish an action:

1. defamatory language
2. about the plaintiff
3. which is published and
4. which causes injury to reputation.

■ Defamation is a quasi-intentional tort, i.e. with the exception of the element of publication, its basis is in strict liability. Publication, however, must be shown to have been done either negligently or intentionally. The emphasis is not upon the meaning of the remarks as being negligent-

ly or intentionally defamatory but rather upon the manner in which such remarks were conveyed. The element of publication takes an adverbial stance: Were the words either negligently or intentionally communicated as to be heard by an understanding third party? *See* Prosser, *Torts*, § 113, p. 479 (4th Edition, 1971).

Appellants argue that the instruction given on this matter failed to pronounce this standard. We disagree as will be established under our discussion of privilege.

■ Slander *per se* differs from ordinary slander in that the words themselves, absent any development of extrinsic facts or circumstances, are actionable. Such words must tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society. But it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct. *Digest Publishing Company v. Perry Publishing Company*, Ky., 284 S.W.2d 832, 834 (1955). *See also Bell v. Courier-Journal and Louisville Times Company*, Ky., 402 S.W. 84 (1966), *Gray v. Central Bank and Trust Company*, Ky.App., 562 S.W.2d 656 (1978).

■ Defamation damages are categorized into compensatory (general and special) and punitive. Special damages are those beyond mere embarrassment which support actual economic loss; general damages relate to humiliation, mental anguish, etc.

■ The major remedial distinction between slander and slander *per se* is that with simple slander there must be a showing of special damages in order to establish the element of injury to reputation. Under slander *per se* the very nature of the defamatory utterance is presumptive evidence of the injury to reputation and of the ill will otherwise necessary to support a puni-

tive award.[1] Although evidence of special damages is not needed to sustain the action, such may nevertheless be offered for a recovery on that basis.

■ As a showing of special damages is mandatory to create a prima facie action for slander, such necessarily is a prerequisite to an award of punitive damages. With slander *per se*, however, the presentation of special damages is optional; it is required neither for a prima facie case nor for the recovery of punitive damages. *Taylor v. Moseley*, 170 Ky. 592, 186 S.W. 634 (1916); *Walker v. Tucker*, 220 Ky. 363, 295 S.W. 138 (1927).

■ That a cause is actionable *per se* is a matter of law. *Shields v. Booles*, 238 Ky. 673, 38 S.W.2d 677 (1931). The primary question to be addressed, therefore, is whether the present cause falls within slander *per se*.

■ Although, as noted, it is not necessary that involvement in a crime be imputed to establish slander *per se*, certainly when such activity is indeed suggested, the requisites are met. Herein the words challenged conveyed the strong assertion that either Mrs. Hay or one of the employees working under her was implicated in the robbery, a criminal offense. Standing alone, those words must be held slanderous *per se*.

■ The question then turns to whether Mrs. Hay was sufficiently identified as the target of suspicion to give her standing to assert an action for defamation. In *Louisville Times v. Stivers*, 252 Ky. 843, 68 S.W.2d 411, 412 (1934), the court noted exceptions to the general rule that when defamatory reference to a class is made, one must establish that he personally was defamed:

> ... if the language employed is *directed toward a comparatively small group* of persons, or a restricted or local portion of a general class, and is so framed as *to*

---

1. *See Tucker v. Kilgore*, Ky., 388 S.W.2d 112 (1965), in which an award of $3,000 compensatory/$1,500 punitive damages was affirmed.

The award was based upon words actionable *per se*.

*make defamatory imputations against all* members of the small or restricted group it seems that *any member thereof may sue.* (Emphasis added.)

Case citations involving groups varying in size from two to seventeen followed. Under the reasoning of this line of cases, Mrs. Hay clearly had standing.

Appellants argue that even were the elements of slander established and Mrs. Hay given standing, they were protected under a theory of privilege. Urging that at least qualified privilege attaches to dealings within the employment relationship, they assert that the court below erred in failing to instruct on the defense of privilege. Appellee responds that privilege is an affirmative defense which under CR 8.03 must be pled or lost. This argument would have merit, for such was not specifically included in appellants' Answer, but for the fact that the record reveals that both the court and appellee were aware that appellants were establishing privilege as a line of defense.

■ In chambers during the course of supporting their motion for a directed verdict appellants spoke to both absolute and qualified privilege and asked assurances from the court that such an instruction would be given. The court was noncommittal; however, appellee's response was not an objection that such defense had not been raised by the pleadings but rather that such a defense could be defeated by a showing of over-publication or malice. In view of this exchange, we cannot hold that appellants lost their opportunity to raise on appeal the issue of failure to instruct on privilege. CR 15.02.

Appellee further suggests that any benefit which would have been drawn from such an instruction was incorporated into the one the court addressed to the jury:

> If you believe from the evidence that on that occasions (sic) referred to in the evidence the defendants, William J. Yung and David Diehl, or either of them, made any false statement, or statements, to or in the presence of, any person other than the plaintiff which would charge or connect the plaintiff with the commission or participation in the crime of robbery occurring at the Best Western Motel on or about February 26, 1979 or which would tend to communicate unfitness of the plaintiff in her occupation or prejudice her in her trade, then the law is for the plaintiff and you shall so find.

> If you do not so believe from the evidence, or if you believe from the evidence that the words and actions of the defendants, about which the plaintiff complains, were based upon facts detailed and prudently made in good faith and were spoken or done as confidentially as circumstances permitted, to aid in the detection of a crime, then the law is for the Defendants and you shall so find.

■ Thus, the question becomes whether privilege did exist, and if so, did the instruction sufficiently encompass its protection? We hold that under the circumstances of the facts presented, a qualified privilege did exist. A robbery had occurred at appellants' place of business, which robbery carried certain indicia of having been an inside job. It was not, therefore, unexpected for appellants to have engaged in their own investigation, bounded by the standard of reasonableness.

The privilege which thus existed was not an absolute one, such as judicial immunity, but rather one qualified by the proviso that it not be abused, *i.e.* that whatever defamation may have been spoken related solely to the investigation, that the remarks not be over-publicized, and that they not be published with malice. *Baker v. Clark*, 186 Ky. 816, 218 S.W. 280 (1920).

It is important to note the distinction between publication as it relates to establishing the action for defamation and to defeating the defense of qualified privilege. Under the former, to preserve the cause it is necessary to prove that the defamatory remarks were spoken either intentionally or in a negligent manner as to allow another to overhear and understand. This establishes slander to which may be raised the defense of privilege, "Yes, I published certain defamatory remarks, but I did so under

the protection of privilege. This privilege existed by virtue of Facts X, Y, and Z."

■ Privilege's having been placed in issue, it thereupon falls upon plaintiff to defeat this defense by a showing that either there was no privilege under the circumstances or that it had been abused. *See Commercial Tribune Pub. Co. v. Haines*, 228 Ky. 483, 15 S.W.2d 306 (1929).

■ The determination of the existence of privilege is a matter of law. *Caslin v. General Electric Company*, Ky.App., 608 S.W.2d 69 (1980). However, whether or not such has been waived is factual. A jury should be instructed accordingly.

A reading of the instruction which the jury did receive gives no indication of the defense of privilege. Rather, it relates merely to whether the statements were made prudently and confidentially. Without privilege's having been mentioned, such guidelines by elimination must be read to relate to publication in its primary role as an element of defamation and not in its secondary position as a privileged matter which when abused defeats the defense. Repeating, these are two separate and distinct matters.

■ The jury as instructed herein was not given the opportunity to understand the procedural progression of a slander claim. It evidently found that the remarks were not prudently and confidentially made (*i.e.* negligently published), but it was not afforded the opportunity to judge the defense: Even if negligently published, was the publication overly extended or done with malice as to defeat the defense of privilege? *Baskett v. Crossfield*, 190 Ky. 751, 228 S.W. 673 (1921), *Thompson v. Bridges*, 209 Ky. 710, 273 S.W. 529 (1925), *Dossett v. New York Mining and Manufacturing Company*, Ky., 451 S.W.2d 843 (1970), and *Tucker v. Kilgore*, Ky., 388 S.W.2d 112 (1965). This was reversible error.

Appellants next argue that it also was error for a punitive award to have been made without a basis in malice. In support is cited *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), in which 418 U.S. at 349, 94 S.Ct. at 3011, 41 L.Ed.2d at 810 it is stated: ". . . the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." Under *Gertz* recovery without such showing is limited to actual proven damages.

That case does not express an application to situations such as the one with which we are presently confronted, *i.e.* a private plaintiff against a private defendant. Its holding spoke to the need for the media to avoid self-censorship and of the tension "between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury." *Id.* 418 U.S. at 342, 94 S.Ct. at 3008, 41 L.Ed.2d at 806. It addressed the distinction between public and private plaintiffs, noting that not only does the private plaintiff have less effective opportunities for rebuttal but also he has not voluntarily exposed himself to greater risk by entering a public forum. It judged that a private plaintiff, ergo, is more deserving of recovery than a public one and that at the states' discretion a standard less than malice, but one nevertheless with a basis in fault, could be used to support recovery.

This approach "recognizes the strength of the legitimate state interest in compensating private individuals for wrongful injury to reputation, yet shields the press and broadcast media from the rigors of strict liability for defamation." *Gertz*, 418 U.S. at 348, 94 S.Ct. at 3011, 41 L.Ed.2d at 810. Following this the Court rendered the statement upon which appellants rely, that proven "malice" is a prerequisite to the recovery of punitive damages. As suggested by Prosser at 821, "malice" as developed by *New York Times Company v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), more properly embraces "scienter." It depends not upon actual ill will or intent to harm but rather upon a knowledge of falsity or reckless disregard for the truth.

In conditioning the recovery of punitive damages upon a showing of malice, it is evident that the *Gertz* court gave weight to the factors upon which earlier cases had turned: comment upon the official conduct of public officials (*New York Times*) and standards of investigation and reporting [*Curtis Publishing Company v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)]. As indicated in the *Gertz* dissent, the emphasis therein was the protection of the communications industry.

At no point in these seminal opinions was there digression to address specifically the situation of a private defendant. Clearly from context all references to defendants contained therein relate to those within the communications media. Had the Supreme Court sought to extend federal libel rules to include all defamation actions regardless of the status of either plaintiff or defendant, we believe such would have been expressed with particularity.

■ It is too broad of sweep of state defamation actions for us to initiate the change suggested by appellants without specific mandate. We decline, therefore, to adopt appellants' position and hold that *Gertz* is to be read for what it is: an examination of the opportunity for recovery by a private plaintiff against a media defendant.

In summation on the issue of slander,

1. The words were slanderous *per se* for which compensatory and punitive damages could be awarded were it shown that they were published negligently or intentionally.

2. Such, however, would be subject to defeat were it shown that the publication was privileged.

3. The privilege itself was subject to defeat were it proven that it was abused through over-publication or malice.

4. Punitive damages are not to be predicated upon a showing of "malice."

Inasmuch as the lower court erred in failing to present to the jury the issue of privilege and defenses thereto in the instructions on slander, this action is reversed and remanded for a new trial.

■ Appellants suggest that it also was error for the court to have submitted evidence regarding appellee's alleged previous shortcomings in the performance of her job on the issue of wage diminishment. We agree that such is totally irrelevant to that issue. Any award for wage diminishment in a slander action is to be established not by showing that Mrs. Hay's firing was or was not justified but rather by relating her unemployment or failure to find equal paying employment to the asserted slanderous remarks.

■ On this issue and on that of false imprisonment, appellants have urged that it was error for the instructions to have precluded a finding that the individual defendants, Yung and Diehl, were acting without the scope of their authority and thus unable to bind the corporation. The instructions allowed awards to be granted against Yung and Columbia Sussex, Diehl and Columbia Sussex, or Yung, Diehl, and Columbia Sussex.

In line with the reasoning offered by *Dossett v. New York Mining and Manufacturing Company, supra*, we agree. On retrial the jury shall be instructed accordingly.

Turning now to that aspect of the action dealing with false imprisonment, appellants urge that the trial court erred in failing to direct a verdict on this issue. We agree.

The key element of false imprisonment is that one is involuntarily restrained. Mrs. Hay testified that she had signed, and there was introduced into evidence the copy of, a statement which asserted that she was not taking the test under either coercion or duress. At trial Mrs. Hay recanted, alleging that she indeed had been coerced under threat of losing her job. She further testified that she had informed the polygraph operator of this at the time the test was conducted.

Prosser speaks to involuntary submission based upon threats of force. He continues by emphasizing that

It is essential ... that the restraint be against the plaintiff's will; and if he agrees of his own free choice to surrender

his freedom of motion, as by remaining in a room ... to clear himself of suspicion ... rather than yielding to the constraint of a threat, then there is no imprisonment.

... Moral pressure, as where the plaintiff remains with the defendant to clear himself of suspicion of theft ... is not enough. Prosser at pp. 44–45.

■ Herein, Mrs. Hay did not submit in order to cleanse her reputation but rather to retain her job. A job is not a vested property right or interest absent additional considerations such as tenure, contract, etc., none of which was present here. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Her situation at Best Western was terminable at will and as such was a mere benefit.

■ What threat against person or property, therefore, was leveled to restrict her freedom of movement? If restraint resulting from the protection of one's reputation against suspicion of criminal activity is deemed merely to have emanated from an exhibition of moral pressure rather than from a threat against person or property, certainly the restraint evidenced by one's interest in retaining an untenured position must also fall short of the standard necessary to prove false imprisonment.

Furthermore, on the question of voluntariness, other than Mrs. Hay's denials in pleadings and upon the stand, there was nothing to establish that the submission was anything other than voluntary. From the record the only indication of displeasure was her inquiry as to what would happen if they did not submit. The response, as noted, was that their jobs would be lost. Appellee then signed the release.

The release itself is in two parts. The first is the voluntary consent to the polygraph examination. It reveals that without duress or coercion and having been advised of her legal rights Mrs. Hay, in signing, agreed to the testing. The second part, signed at the conclusion of the testing, indicates that although knowledgeable of being able to leave at any time during the examination, appellee chose to remain of her own free will.

Mrs. Hay offered no more than herself as witness to indicate her state of mind at that time. The polygraph operator was not called to confirm her story. The results of the polygraph were not introduced to show that a lie had been told in the matter of voluntary consent. None of the motel employees testified that Mrs. Hay had revealed feelings of coercion or duress. (One worker acknowledged that she, under identical circumstances, had voluntarily taken the examination.)

■ If a release and consent form is to have any validity at all upon which those associated with the giving of polygraph examinations may rely, clearly it is not to be subject to defeat by unsubstantiated later assertions that although the document was signed, the examinee had not in truth intended at that time to subscribe to its contents.

■ To prosecute successfully a claim for false imprisonment, there must have been established

1. Defendant's act by force or threats of force against person or property

2. Which with intent caused plaintiff to be confined to an area certain.

■ In this instance the burden was upon Mrs. Hay not only to establish the requisites of the cause but also in doing so to overcome the presumptive effect of voluntariness which the release form carried. Appellee clearly failed to establish her prima facie case; thus, the lower court was in error in denying appellants' motion for a directed verdict upon this issue.

Finally appellants urgently argue that the acts complained of (both slander and false imprisonment) arose within the employment relationship and that, accordingly, resolution lies within the exclusive jurisdiction of the Workers' Compensation Board. KRS 342 establishes that all other employment liabilities are supplanted by that established under the Workers' Compensation Act unless the injury to be redressed resulted from willful and physical agression.

■ We decline to extend Workers' Compensation to cover the acts alleged

 

herein. The purpose of Workers' Compensation is to redress physical and mental injuries and damages arising from the employment relationship. The crux of a slander *per se* action is not injury, for no actual damages are required to be shown. Likewise, false imprisonment stands or falls upon elements which may result in damages, but again such are not requisite for a prima facie case.

Inasmuch as liability for both slander *per se* and false imprisonment can be established without a showing of actual damages, there is nothing for which the Workers' Compensation Act would compensate. The Act is strictly limited to recovery for actual injuries; thus, the fact that damages under either cause could punitively be assigned does not serve to extend its application.

The judgment of the Boone Circuit Court is reversed and remanded with instructions to retry the issue of slander in accordance with the law cited herein and to enter a final judgment on the issue of false imprisonment in favor of appellants Columbia Sussex, Yung, and Diehl.

All concur.