951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Byron RECORD, Plaintiff-Appellant,
v.
WHIRLPOOL CORPORATION; Edward R. Probst; and Professional
Law Enforcement, Inc., d/b/a/ Business Risks
International, Inc., Defendants-Appellees.
 No. 91-5366.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1991.
 
 Before RYAN and BOGGS, Circuit Judges, and GODBOLD, Senior Circuit Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff Byron Record appeals the district court's grant of summary judgment in favor of his former employer, Whirlpool Corporation, on claims of wrongful discharge and defamation. Plaintiff also appeals the summary judgment granted in favor of Professional Law Enforcement, Inc. ("PLE") and Edward R. Probst on a claim of negligent inspection. We affirm.
 
 I.
 
 2
 Plaintiff was employed at Whirlpool's Danville, Kentucky facility from 1977 until his termination in March 1988. During 1987, Whirlpool hired PLE to conduct an undercover investigation of employee drug use at the Danville facility. The investigation was conducted with the active assistance of the Boyle County (Ky.) Sheriff's Department and the Kentucky State Police. Defendant Edward R. Probst was PLE's agent at the Whirlpool plant and posed as a janitor in order to conduct his investigation. On June 12, 1987, Probst allegedly observed Record and two others smoking marijuana in a car in the Whirlpool parking lot. Besides his visual observation, Probst also claimed to have smelled the "distinctive odor" of marijuana in the area. Probst recorded the incident, but no immediate action was taken, and the undercover operations continued.
 
 
 3
 On March 10, 1988, the undercover investigation was terminated. Record reported for his usual third shift at 11:00 p.m. that night, and upon arrival was handed a letter from Whirlpool personnel officials informing him of an alleged policy violation. The officials advised Record that he was on disciplinary suspension, that the letter contained details of the action, and that they would contact him about returning to the plant to discuss the suspension.
 
 
 4
 The following day, local law enforcement officials held a press conference to announce the results of their undercover operations in Danville. A number of Whirlpool employees were arrested for drug activity, mainly on distribution charges. Record was not among those arrested or indicted. Whirlpool issued a press release that day, noting Whirlpool's cooperation with local officials and their active participation in the undercover investigation.
 
 
 5
 Whirlpool officials contacted Record to arrange a meeting to review his suspension. On March 17, 1988, he appeared at the Danville plant accompanied by his attorney. Whirlpool officials declined to meet with Record in the presence of his attorney, in keeping with an alleged company practice of not permitting attorneys to attend disciplinary proceedings. Record told the officials he would not meet with them in the absence of his attorney. However, he later attended a meeting on March 25, 1988, unaccompanied. At the March 25 meeting, Whirlpool officials informed Record of the allegations made against him as a result of the undercover investigation. Record denied smoking marijuana in the company parking lot on June 12, 1987. He admitted that he may have been in the car, but maintained that he had been smoking a tobacco cigarette, not marijuana.
 
 
 6
 Company officials decided that they had been provided accurate and reliable information from PLE agent Probst and terminated Record for violation of company policies concerning drug use on the premises. A final appeal of the termination decision was provided at a meeting on March 30, 1988. Record reiterated his position that he had been smoking a regular cigarette rather than marijuana.
 
 
 7
 On June 29, 1988, Record filed his first complaint in this lawsuit. On July 3, 1988, a local newspaper published an article detailing Record's claims. Record admits that this article was the first time his name appeared in the newspaper in connection with the undercover investigation of drug use at the Whirlpool facility.
 
 II.
 
 8
 Our review of a grant of summary judgment is de novo, employing the same test used by the district court. EEOC v. Univ. of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988).
 
 III.
 
 9
 On appeal, Record's first assignment of error involves the district court's holding that he was an "at will" employee. Record relies specifically upon a handbook distributed to employees at the Danville plant entitled A Statement of Wages, Hours and Working Conditions. The handbook's "Statement of Intent" includes a passage providing:
 
 
 10
 The mutual interest of the employees and the company requires the continued successful promotion of the business upon which both depend. The broad, basic purpose of this Statement is to contribute toward this goal through faithful observance by both the employees and the company of the provisions and intent of this Statement.
 
 
 11
 Section 12.01 of the handbook provides that disciplinary problems will be handled "in a fair and equitable manner," and that the company will follow the procedures set forth in the handbook "where just and sufficient investigation indicates that an employee has violated plant or safety rules, or has been guilty of other improper conduct." Relying on these sections, Record alleges that the employee handbook created a contract of employment with Whirlpool, binding the company to conduct a "just and sufficient investigation" prior to the termination of an employee.
 
 
 12
 Kentucky courts require the expression of a clear intention to create an employment contract terminable only pursuant to its express terms before departing from the "at will" doctrine. Shah v. American Synthetic Rubber Corp., 655 S.W.2d 489, 492 (Ky.1983). Under Kentucky law, "parties may enter into a contract of employment terminable only pursuant to its express terms by clearly stating their intention to do so. Otherwise, the employment is 'at will' and may be terminated, in the main, by either party for any reason or no reason at all." Nork v. Fetter Printing Co., 738 S.W.2d 824, 826-27 (Ky.Ct.App.1987).
 
 
 13
 We hold that the district court did not err in granting summary judgment to Whirlpool on Record's wrongful discharge claim. The employee handbook at issue in this case did not create a contract of employment. There is no statement manifesting an intention by Whirlpool to alter the "at will" employment doctrine. Plaintiff also fails to cite any Kentucky cases implying an employment contract from such an employee handbook.
 
 
 14
 Next, Record argues that his defamation claim should not have been subject to summary judgment in favor of Whirlpool. Record claims that he was defamed in three ways: by receiving his discharge letter in the presence of six other people, by the company's press release of March 11, 1988, and by being forced to convey defamatory information about himself to prospective employers.
 
 
 15
 The defamation claims are without merit. With respect to the first claim of defamation, the district court's finding that there had been no publication of defamatory information was not erroneous. Record relies on Columbia Sussex Corp., Inc. v. Hay, 627 S.W.2d 270, 276 (Ky.Ct.App.1981). That case, however, involved per se slanderous statements that were uttered about the plaintiff in the presence of others. In handing Record a sealed envelope containing his suspension notice, Whirlpool did not publish a defamatory statement to any third person.
 
 
 16
 As to the press release, in Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders, 563 S.W.2d 8, 9 (Ky.1978), the Kentucky Supreme Court wrote: "To defame a class, the statement must be applicable to every member of the class, and if the words used contain no reflection upon any particular individual, no averment can make them defamatory." The press release at issue in this case referred to 41 persons being indicted on drug charges and to Whirlpool's cooperation with local law enforcement officials in conducting their investigation. It does not refer by name to any individual indicted by law enforcement officials or disciplined by the company and cannot be said to defame Record in any way.
 
 
 17
 The third defamation claim involves the so-called "compulsory publication" of defamatory information. Record can point to no Kentucky case law which would support this court's recognition of such a cause of action, however, and there is no reason to further treat this issue.
 
 
 18
 Finally, Record's allegations of negligent inspection by PLE and Edward Probst fail as well. Simply put, defendants owed Record no duty to conduct a "just and sufficient investigation." Record argues that a third party injured by the negligence of a party to a contract is entitled to damages. To support this claim, however, Record relies upon classic third-party beneficiary contract cases. As Record was not a third-party beneficiary to any contract between Whirlpool and PLE, the cases cited are inapposite. Furthermore, as stated above, Record had no contract of employment with Whirlpool. The district court properly ruled that there was no duty to conduct a fair investigation under Kentucky law.
 
 
 19
 Since there exists no genuine issue of material fact as to plaintiff's wrongful discharge, defamation, or negligence claims, the district court properly granted summary judgment.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable John C. Godbold, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation