William **BIBER** and Information Technologies Consulting, Inc., Appellants,

v.

**DUPLICATOR SALES & SERVICE, INC.** d/b/a Derby City Lithographing; **Jerry Nash** and **Debra Dedoming,** Appellees.

No. 2003–CA–001994–MR.

Court of Appeals of Kentucky.

Dec. 3, 2004.

Rehearing Denied Jan. 19, 2005.

---

John H. Ruby, Louisville, KY, for Appellants.

R. Douglas Burchett, Angela D. Lucchese, Blackburn, Hundley & Domene, PLLC, Louisville, KY, for Appellees.

Before DYCHE and McANULTY, Judges; EMBERTON, Senior Judge.[1]

## OPINION

EMBERTON, Senior Judge.

In December 2001, Information Technologies Consulting, Inc. owned by William Biber, and Duplicator Sales & Service Inc., d/b/a Derby City Lithographing, entered into a written contract under which Information Technologies agreed to perform consulting services for the design and implementation of computer network information technology and information systems. In exchange, Duplicator Sales agreed to pay Information Technologies $70,000 for a period of one year. Duplicator Sales terminated the agreement on January 15, 2002. Biber commenced this action alleging that Duplicator Sales failed to give proper notice when it terminated the contract and that Duplicator's president, Jerry Nash, and its human resources manager, Debra deDoming, defamed him in making slanderous statements to other Duplicator Sales employees. The circuit court held that as a matter of law both claims failed and granted summary judgment. We agree.

The contract contained the following termination provision:

> It is further understood and agreed that Client [DSS] may terminate this Agreement, without cause, on 30-day written notice, and that upon the giving of such notice, Client [DSS] may, at its discretion, pay to Consultant [appellants] an

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

amount equal to 30 days compensation under the Agreement, in lieu of requiring additional work under this Agreement. Following termination of this Agreement, regardless of reason, Client [DSS] shall have no further monetary obligation hereunder.

In January 2002, Duplicator Sales became aware that Biber was filling out purchase orders for an inflated price to a company owned by his wife but was actually obtaining the equipment through another company at a lower price. On January 15, 2002, Duplicator Sales terminated the agreement by giving a thirty-day written notice and paying Information Technologies $5,753.42.

 Biber alleges that because Duplicator Sales terminated the contract for cause, it was required to give it notice of the breach of contract and five days to cure the deficient performance. The thirty-day notice and payment of one month's fee, it contends, was not an effective termination. The construction, meaning, and legal effect of a written contract are matters of law for the court to decide.[2] Absent ambiguity, a written contract is enforced according to its terms, with words being given their ordinary meaning.[3]

Biber argues that the only viable interpretation of the termination provision is that if Duplicator Sales had cause to terminate the contract, it was required to give notice of the breach and five days to cure any deficient performance. Duplicator Sales points out that it does not allege that the contract was breached. Although it was dissatisfied with Biber's deceptive buying practices and taking of profits, there was nothing in the contract to prohibit him from making a profit in addition to his contract fee. Biber admits that Duplicator Sales never informed him that the terms of the contract had been violated and nothing in the contract prohibited him from earning a profit from the computer transactions. By Biber's own admission, the first clause of the termination agreement was not triggered.

 The second clause of the termination provision, invoked by Duplicator Sales, would apply only when Duplicator Sales chose to terminate the contract and was obviously bargained for as an advantage to Duplicator Sales. A contract containing a termination without cause provision is not transformed into a "for cause only" provision because the party terminating the contract notifies the other party that the contract is being terminated for cause.[4] The ordinary meaning of a without cause provision is that it includes cause, no cause, or even a reason morally indefensible.[5] Biber contends that if Duplicator Sales had a reason to terminate the contract, it was precluded from terminating it on thirty days notice and payment of one month's fee. Such interpretation defies the wording of the contract, common sense, and intent of the parties. As a matter of law, Biber's breach of contract action fails.[6]

Biber has also pursued a slander action against Nash and deDoming based on alleged statements made to other Duplicator

**2.** *Morganfield Nat. Bank v. Damien Elder & Sons,* Ky., 836 S.W.2d 893 (1992).

**3.** *O'Bryan v. Massey–Ferguson, Inc.,* Ky., 413 S.W.2d 891 (1966).

**4.** *Hunt Enterprises, Inc. v. John Deere Industrial Equipment Co.,* 18 F.Supp.2d 697 (1997)(holding that although a reason was provided in the termination letter, the "without cause" termination provision was applicable).

**5.** *Firestone Textile Co., Div. v. Meadows,* Ky., 666 S.W.2d 730 (1983).

**6.** *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779, 781 (1996).

Sales employees. The circuit court held that, as a matter of law, Biber could not succeed because the alleged statements were made between Duplicator Sales employees in the scope and course of their employment.

■■ To establish an action for defamation four elements are necessary: (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation.[7] In the context of statements made within the employment relationship, Kentucky courts have recognized a qualified privilege. In *Columbia Sussex*, the court held that statements made in the course of a robbery investigation regarding the culpability of an employee were privileged to the extent the statements were not made with malice and were not over-publicized.[8] The determination of the existence of privilege is a matter of law, but whether it has been abused is a question of fact.[9] The circuit court in the case before us did not reach the question of whether the privilege had been abused, but held, as a matter of law, that there was no publication because the words were not communicated and heard by an understanding third party.[10] Because of the circuit court's ruling, we are compelled to discuss the soundness of its reasoning.

The intra-corporate immunity rule, adopted in some jurisdictions, provides that there is no publication of statements between agents or employees of a corporation within the scope of employment and relative to duties performed for that corporation.[11] In *Nelson v. Lapeyrouse Grain Corporation,*[12] the court found the corporate structure sufficient to justify the rule.

A corporation can act only through its servants, agents or employees, and when officers and employees of a corporation act within the scope of their employment and within the line of their duties, they are not third persons *vis-à-vis* the corporation. (Citations omitted.)

The view has also been expressed that there is a practical need for a corporation to inform itself of the activities of its employees and to solve personnel·problems.[13] To conduct its daily business, the employees and officers of a corporation must be able to freely discuss internal matters without fear of a civil lawsuit.

But not every jurisdiction has been willing to accept the intra-corporate immunity rule. There is the persuasive argument that such a rule opens the door to abuses permitting a person's reputation to be defamed within the corporation without means of redress.

These jurisdictions consider damage to one's reputation within a corporate community to be just as devastating as that effected by defamation spread to the outside. Although corporate officers might be the embodiment of the corporation ... they remain individuals with distinct personalities and opinions which might be affected just as surely as those of other employees by the spread of injurious falsehoods.[14]

7. *Columbia Sussex Corp., Inc. v. Hay,* Ky.App., 627 S.W.2d 270 (1981).

8. *Id.* at 275.

9. *Id.* at 276.

10. *Id.* at 274.

11. 50 Am.Jur.2d., *Libel and Slander* § 247.

12. 534 So.2d 1085, 1093 (Ala.1988).

13. *Blake v. May Dept. Stores Co.,* 882 S.W.2d 688, 691 (Mo.App. E.D.1994).

14. *Bals v. Verduzco,* 600 N.E.2d 1353, 1355 (Ind.1992).

We can find no case where Kentucky has either expressly accepted or rejected the intra-corporate immunity rule. In *Wyant v. SCM Corp.*,[15] the plaintiff's defamation charge was based on a corporate internal personnel report. The court held that there was no evidence that the statement was ever published to a third person and that the qualified privilege was not defeated because the record disclosed no hint of malice.[16] From the facts disclosed in the opinion, it is unclear whether the internal report was given to anyone else inside or outside the corporation or whether the court was adopting the intra-corporate immunity rule. We find little guidance offered by the *Wyant* case and can find no case, including *Columbia Sussex,* where the rule is discussed. We view this as a case of first impression.

█ We believe the better view is that expressed in the *Restatement* and in those jurisdictions that decline to accept the rule. The right to recover for injuries to reputation is embodied in Section 14 of the Kentucky Constitution. We agree with our sister state, Indiana, where the court concluded that to hold that intra-corporate communications are communications with only the corporation and not a third person, creates an unacceptable legal fiction depriving court access to an employee who suffers real and significant damage from defamatory remarks.[17]

We can see no reason to insulate a corporation, its officers, or employees from liability for defamation simply because the statements were made exclusively to corporate officers or employees. Our rejection of the rule is consistent with the interpretation of Kentucky law in *Brewer v. American National Insurance*[18] where the court, faced with an absence of direct case law on the issue, concluded that Kentucky has recognized only a qualified privilege and would reject the intra-corporate immunity rule. We now expressly reject the intra-corporate immunity rule as it applies to defamation actions.

█ Although we disagree with the circuit court that intra-corporate communications are absolutely privileged, we affirm on the basis that the alleged statements were based on truth and pure opinion. Biber complains that Nash told other corporate employees that Biber's profit taking and transactions through his wife's company "was throwing up red flags" and appeared unethical. He allegedly stated he "felt like he had been conned by the world's greatest con man." The problems with the company, he allegedly said, would be straightened out "as soon as we get rid of all these Bill Bibers." Even if motivated by malice or ill will, truth is an absolute defense to a defamation action.[19] And an expression of opinion, as opposed to a defamatory statement of fact, is entitled to an absolute privilege. Quoting the *Restatement (Second) of Torts,* Section 566 (1977), in *Yancey v. Hamilton*[20] the court adopted the following approach to the fact-opinion distinction:

> "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion."

15. Ky.App., 692 S.W.2d 814 (1985).

16. *Id.* at 816.

17. *Bals, supra,* at 1355–56.

18. 636 F.2d 150, 153–154 (1980).

19. *Bell v. Courier–Journal & Louisville Times Co.,* Ky., 402 S.W.2d 84 (1966).

20. Ky., 786 S.W.2d 854, 857 (1989).

**738**

Alleged defamatory statements must be construed in the context of the entire communication.[21]

Biber admits that he authored false purchase orders listing his wife's company as the computer supplier and at prices higher than he actually paid. And he pocketed the profit from the transaction without informing Duplicator Sales of the actual price. The statements that these transactions threw up red flags, that they were causing Duplicator Sales financial difficulty, and that they appeared unethical are based on truthful facts. The reference to Biber as a "con man" is likewise an opinion based on the facts admitted. In *Yancey,* after being charged with murder, Yancey was the subject of a newspaper article in which it was reported that a family friend told the newspaper that Yancey was a con artist. The court held that while the statement was not one of pure opinion, the truth of the facts underlying the statement had to be determined by a jury.[22] In this case, Biber admits that he was dishonest in his dealings with Duplicator Sales. Although the label offends him, it is based on truthful facts and is not actionable.

We disagree with the circuit court's opinion that communications between corporate employees is not a publication for the purpose of establishing a defamation action. We affirm the summary judgment, however, because the words allegedly uttered were absolutely privileged as expressions of opinion based on truthful facts.

ALL CONCUR.