NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0432n.06

No. 23-5944

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 29, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| DAVID B. PORTER, | ) | |
| Plaintiff-Appellant, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN |
| F. TYLER SERGENT; BEREA COLLEGE, | ) ) | DISTRICT OF KENTUCKY |
| Defendants-Appellees. | ) ) | OPINION |
| | ) | |

Before:  GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge.  Professor David Porter sued his former employer, Berea College, for employment discrimination, retaliation, and breach of contract, and he sued his former colleague, Professor F. Tyler Sergent, for defamation, portrayal in a false light, and retaliation. The district court granted summary judgment in favor of the defendants on all claims.  We affirm in part and reverse in part.

I.

In describing the facts for purposes of summary judgment, we view the record in the light most favorable to Porter.  *Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 207 (6th Cir. 2021).

David Porter, a white male in his late 60s, was a tenured professor of psychology and general studies at Berea College from 2005 until September 2018.  In March 2017, a younger female colleague, Wendy Williams, initiated a Title IX complaint against the then-chair of the psychology department, Wayne Messer, for allegedly creating a hostile-work environment for

women. Two of Williams's female colleagues later joined the complaint. Porter served as Messer's advisor throughout the grievance proceedings. In September 2017, a disciplinary board found Messer guilty, and Berea's president, Lyle Roelofs, removed Messer as department chair. Soon afterward, in email exchanges with President Roelofs and Dean Chad Berry, and in an open letter to campus, Porter said that the proceedings against Messer had been flawed and unfair.

In February 2018, for one of his psychology courses, Porter created a survey to measure "community perceptions and attitudes about academic freedom, freedom of speech, and hostile work environments under civil rights law." The survey contained hypothetical scenarios based on Porter's observations of Messer's Title IX investigation. But the survey did not include any names, and its instructions disclaimed any "relationship between these scenarios and actual events, either here at Berea College or elsewhere." Porter shared the survey with a few of his colleagues, including Messer, who worried that it might be "highly inflammatory."

Porter later emailed the survey to all the students and faculty at Berea, which stirred controversy on campus. Williams posted on Facebook that she was "one of the not anonymous targets of [the] survey," and that the scenarios were a "biased portrayal" of her Title IX complaints. Dean Berry asked Porter to remove the survey from the internet, and Porter later sent a campus-wide email in which he apologized for the survey's flaws and for its negative impact on Berea's students and faculty.

On February 22, 2018, President Roelofs sent Porter a letter notifying him that Dean Berry had initiated disciplinary proceedings to seek Porter's dismissal. Attached to the letter was a "statement of grounds for dismissal," which asserted (among other things) that Porter's survey had harmed his students and colleagues. The letter itself cited a provision of Berea's Faculty Manual, which said faculty can be terminated for cause if they engage in "personal conduct which

demonstrably hinders fulfillment of professional responsibilities." In the letter, Roelofs suspended Porter with pay and told him to stay off campus except to attend disciplinary hearings.

F. Tyler Sergent is a history professor at Berea, a faculty advisor to the Student Government Association (SGA), and Williams's husband. After Porter's suspension, the SGA voted to give Porter its annual Student Service Award. Sergent expressed his "vehement objection" to that decision in a series of emails to three students on the SGA Executive Committee and to another faculty advisor, Rachel Vagts. In the first email, Sergent said Porter should not receive the award because Porter had defended Messer's "racist, sexist, and homophobic comments" in the Title IX case. Sergent also accused Porter of making "sexist, disparaging remarks" about his female colleagues, and of falsely "disclosing personal medical records of one"—namely Sergent's wife, Williams. Sergent also said the students supporting Porter were "victims of manipulation by an unethical, unrepentant, academically dishonest person who is in process of rightly being fired from Berea College."

Vagts, the other faculty advisor, replied in agreement and copied Yabsira Ayele, another student on the SGA executive committee. But Ayele defended the SGA's decision, emailing the group that Porter was worthy of the award because of "his excellence in service to students." Sergent responded that he was "not inviting a debate with you or anyone else who would defend the unethical action of David Porter—they are indefensible." Ayele replied that he was entitled to his opinion; but Sergent responded that Ayele was not entitled to an opinion on this issue, and he warned Ayele "against burning bridges this early in your education, particularly for the wrong side of the cause." The SGA soon held a meeting and rescinded the award.

In April 2018, after a two-day hearing, a disciplinary committee led by Dean Berry recommended that Porter be terminated. President Roelofs later accepted the committee's

recommendation and fired Porter. Thereafter Porter brought this suit, which the defendants removed from state court to federal. After discovery, the district court granted summary judgment in favor of the defendants. This appeal followed.

II.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Porter. *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). Summary judgment is proper only when the record shows that there is no genuine issue as to any material fact. *Id.* "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

A.

Porter sued Berea College for age, race, and sex discrimination, and for illegal retaliation, all in violation of the Age Discrimination in Employment Act (ADEA), Title VII, and Title IX. He also brought state-law claims against Berea for breach of his employment contract.

1.

We begin with Porter's discrimination claims, in which he says Berea fired him because he is an older, white male. A plaintiff may raise a genuine issue of material fact for such a claim by offering either direct or indirect evidence of discrimination. *See Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020). Direct evidence "proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Evidence requires no inferences—and is thus "direct"—only if it pertains to the same supervisor and the same decision at issue in the plaintiff's claim. *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 581 (6th Cir. 2022).

Porter cites two pieces of putative direct evidence here. First, he points to a comment that Williams allegedly made during a faculty hiring-committee meeting—namely, that "[t]he last thing we need in this department is any more old white guys." But Williams was not Porter's supervisor, and that comment did not pertain to his firing. Second, Porter cites an alleged comment by Dean Berry, namely that he would only hire "black or brown" faculty members. But that statement is not about Porter or about Berea's decision to fire him. Hence Porter lacks direct evidence of discrimination.

That leaves Porter's indirect evidence of discrimination, which we analyze using a burden-shifting regime. Under that regime, the plaintiff must first present a prima facie case of discrimination. If he does, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. And if the employer does so, the burden shifts back to the employee to prove that the employer's stated reason was a pretext for unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

To make a prima facie case of discrimination, a plaintiff must show, as relevant here, "circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). A plaintiff makes that showing if he presents evidence that his employer has "treated similarly situated, non-protected employees more favorably" than he was treated. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 522 (6th Cir. 2008).

Here, to that end, Porter says that Berea treated older, white-male professors differently than it did younger, female professors when members of the two groups refused to attend mandatory meetings. Specifically, Porter offers evidence that Dean Berry disciplined two other older, white-male professors—by docking their pay and denying them promotions—for refusing to attend a mandatory diversity training; whereas, when three younger, female professors who

-5-

brought the Title IX complaint against Messer all refused to attend a mandatory meeting with Porter and Messer, Dean Berry disciplined them not at all.

The conduct of these two groups of professors was indeed similar, and their treatment by Dean Berry notably dissimilar. Yet the district court accepted as a "mitigating circumstance[]" the female professors' claim that the meeting with Porter and Messer "would have involved coming face-to-face with a man they had accused of creating a hostile workplace and the man who had advised him." But on that point the court failed to view the facts in the light most favorable to Porter. For the older, white-male professors had reasons of their own for refusing, quite deliberately, to attend their meeting; and yet the district court adopted as "mitigating" the reasoning offered by the other group of professors—without showing any of the same solicitude for the group aligned with Porter. Moreover, the point of the comparator inquiry is to draw an inference regarding the decisionmaker's motivation for the adverse employment action, not the employee's.

The problem with Porter's evidence, however, is that Porter himself was a member of neither comparator group. Porter was not one of the white, male professors disciplined for refusing to attend a meeting. And that means the comparison is not relevant for purposes of making his prima facie case. *See Romans v. Michigan Dep't of Hum. Servs.*, 668 F.3d 826, 837-38 (6th Cir. 2012). Nor has Porter offered other indirect evidence of discrimination. Berea was therefore entitled summary judgment on his discrimination claims.

2.

We next consider Porter's retaliation claim under Title IX, for which we apply the same burden-shifting regime. *Doe v. Univ. of Kentucky*, 111 F.4th 705, 716 (6th Cir. 2024). To establish a prima facie case for this claim, Porter must show that he engaged in "protected activity"; that Berea knew about that activity; that he suffered an "adverse school-related action"; and that

"a causal connection exists between the protected activity and the adverse action." *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020).

To amount to "protected activity" under Title IX, "a complaint must specifically accuse a recipient of engaging in intentional sex discrimination[.]" *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 253 (6th Cir. 2023). Here, as protected activity, Porter cites his criticisms of the disciplinary proceedings against Messer. But those criticisms concerned the fairness of those proceedings; Porter nowhere accused anyone of discrimination based on Messer's sex. Porter therefore did not make a prima facie case for retaliation under Title IX. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). Summary judgment was proper.

3.

We make shorter work of Porter's claims against Berea for breach of contract, to which the court devoted fourteen pages of patient analysis before granting summary judgment in favor of the defendants. We affirm that grant for substantially the reasons stated by the district court: the relevant agreement (namely the Faculty Manual and Employee Handbook) did not incorporate any federal constitutional guarantees; Porter did not explain in his summary-judgment briefing (and has not explained here) exactly what provisions in the Manual and Handbook he thought Berea had violated, and why; and *McAdams v. Marquette University*, 914 N.W.2d 708 (Wis. 2018), has little if any relevance here.

B.

That leaves Porter's claims against Sergent for defamation, portrayal in a false light, and retaliation under Kentucky law. We affirm the district court's grant of summary judgment as to the false-light and retaliation claims for substantially the reasons stated by the district court. But we disagree with the court's grant of summary judgment as to the defamation claim.

-7-

Porter claims that Sergent defamed him in emails to four student members of the SGA and to Sergent's co-advisor. To survive summary judgment on a defamation claim, a plaintiff must show that the defendant made a false statement about him; that the defendant negligently or intentionally communicated the statement to a third party; and that doing so caused injury to the plaintiff's reputation. *See Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). Courts will presume that certain kinds of statements caused injury to a plaintiff's reputation based on their content alone, which makes them defamatory per se. *See Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014). Among those kinds of statements, in Kentucky, is a false statement that a person is "unfit[] to perform a job." *Id.*

In some contexts, however, Kentucky courts apply a "qualified privilege" of "common interest." *Id.* at 286. That privilege applies when the message's recipients share a "corresponding interest" with the speaker. *Id.* at 282. The privilege's purpose is to protect even defamatory per se statements when "the societal interest in the unrestricted flow of communication is greater than the private interest" against being defamed. *Id.* When a qualified privilege attaches, "even 'false and defamatory statements will not give rise to a cause of action unless maliciously uttered.'" *Harstad v. Whiteman*, 338 S.W.3d 804, 813 (Ky. Ct. App. 2011) (citation omitted). The privilege negates the presumption of injury for statements that are defamatory per se, and the burden shifts back to the plaintiff to prove that the statements were made with "malice," which means "malevolence or ill will." *Toler*, 458 S.W.3d at 283. The privilege is "[n]ot an absolute defense," but its "protection can be lost through unreasonable actions amounting to abuse." *Id.*

On April 8, 2018, Sergent sent an email to three student members of the SGA's Executive Committee and his fellow faculty advisor, Rachel Vagts, in which Sergent expressed his "vehement objection" to the SGA's decision to give Porter the service award, and asked the group

to "share this with everyone else on the executive committee for tonight's meeting." In the email, Sergent objected to Porter's defense of Messer in the Title IX proceedings, accused Porter of making "sexist, disparaging remarks" about the female faculty members who had brought the Title IX complaint against Messer, and asserted that Porter had "disclos[ed] personal medical records of one"—referring to Sergent's wife, Williams. Sergent then listed what he called the "reasons for which Porter has been suspended and is in the process of being fired," including "academic dishonesty," "gross ethical violations," "incompetence," and "manipulation of students." Sergent added that the students who nominated Porter for the award were "victims of manipulation by an unethical, unrepentant, academically dishonest person who is in process of rightly being fired from Berea College." He concluded that the "SGA can and ought to do better."

Student Yabsira Ayele replied with a defense of the SGA's decision. Sergent responded, in relevant part:

> I am not inviting a debate with you or anyone else who would defend the unethical action of David Porter—they are indefensible just like racism and any other of form discrimination—or any other faculty member who has caused harm to other members of our community. Rewarding those actions and the harm coming from them is not the Berean way. The administration has good reasons for suspension and the case will be adjudicated.
>
> I gave my advice and detailed my reasons for that advice. I have no doubt that you believe you are doing what is right. But there are people giving you advice who know a great deal more about this situation than you do.

Sergent also warned, "you do not want to be among a group of student leaders on the wrong side of Berea's history. Therefore, I urge the SGA to heed our advice."

Ayele responded, "You are entitled to your opinions and I am entitled to mine." He wrote that he was "disappointed" with Sergent's position and added, "[t]o threaten me is unethical. I do not know the entire situation and you don't either." Sergent then replied, in relevant part:

> Until you actually know something about the situation, there is no basis for debate or dialogue. I voiced my advice as part of my role as elected faculty advisor . . . . Clearly you have no interest in my advice or the advice of your other faculty advisor, both of whom know much more than you about a great many things directly related to this situation . . . .
>
> One last bit of advice: I would caution you against burning bridges this early in your education, particularly for the wrong side of a cause.
>
> Do not email me again regarding this issue.
>
> Dr. Sergent

The parties agreed at summary judgment that these emails are defamatory per se, which the district court noted "makes good sense" because they tended to "prejudice" Porter in his role as a professor. *See Shields v. Booles*, 38 S.W.2d 677, 680 (Ky. 1931). We agree: Sergent's statements that Porter was "unethical," "academically dishonest," "incompetent," and guilty of "manipulation of students" bear directly on Porter's "unfitness" to perform his job. *Toler*, 458 S.W.3d at 282.

Sergent argues these statements were either true or non-actionable opinion—asserting that his email simply restated Berea's grounds for dismissal, as attached to President Roelof's February 22, 2018 letter to Porter. But that letter nowhere called Porter "incompetent" or guilty of "manipulation of students." Nor has Sergent identified any Kentucky case that holds a similar statement to be non-actionable opinion. Porter has thus made enough of a showing for each of the elements of defamation to survive summary judgment.

The district court nonetheless held that the emails were protected by the common-interest privilege—because, the court said, Sergent shared with the email's recipients an interest in giving the SGA award to a deserving person. But the court seemed to overlook that the privilege is "[n]ot an absolute defense." *Toler*, 458 S.W.3d at 283. For the privilege is negated if the speaker "abuse[d]" the privilege or acted with "malevolence or ill will." *Id.* And whether a speaker has

done so is a question of fact for the jury. *Fortney v. Guzman*, 482 S.W.3d 784, 790 (Ky. Ct. App. 2015).

A jury could easily make those findings here. For example, given that Sergent's wife, Williams, was a party to the very proceedings in which Sergent said that Porter had made "sexist" (etc.) comments, a jury could reasonably find that Sergent's "vehement objection" to the SGA's decision was fueled by more than a concern that the best possible recipient be chosen for the Student Service Award. A jury could likewise find that Sergent's remarks toward Ayele—an undergraduate student—were abusive. Indeed, Sergent himself admitted that another colleague, Dr. Smith, had criticized Sergent's "improper behavior" and his "attempts to intimidate" Ayele. Smith also questioned Sergent's "judgment and fitness to continue as the SGA faculty advisor," and said that Sergent was "clearly too close to the situation to be objective." Sergent also admitted that—when he saw Porter on the street about 18 months after the email exchange—Sergent had shouted, "F— you, Dave" without provocation. Viewing all this evidence in the light most favorable to Porter, especially, a jury could find all the facts necessary for Porter to prevail on his defamation claim. The district court erred in concluding otherwise.

We also observe, for purposes of remand, that surely not every shared interest is weighty enough to allow one person, as a matter of law, to say anything he likes in defamation of another. And the interest the court cited here—choosing the recipient of a student award—strikes us as questionable, at least as measured against the statements at issue here. We invite the court to revisit that determination (with the benefit of more focused briefing than we have here) on remand.

\*     \*     \*

The district court's judgment is affirmed, except that its grant of summary judgment in favor of Sergent on the defamation claim is reversed. The case is remanded for further proceedings consistent with this opinion.